HILL v CLARK EQUIPMENT COMPANY

1. LIMITATION OF ACTIONS—TOLLING STATUTE—INSANITY.

Under Alabama law, as well as Michigan law, the insanity of a plaintiff at the time his claim accrues tolls the running of the statute of limitation, including traumatic insanity and specifically insanity which arises at the same time plaintiff's claim accrues (Code of Alabama, Title 7, § 36; MCLA 600.5851).

2. LIMITATION OF ACTIONS—TOLLING STATUTE—INSANITY—COMPREHENSION OF RIGHTS—QUESTION OF FACT.

The determination of plaintiff's claim, against which defendant offered no evidence, of being in an unsound, deranged condition of the mind barring him from comprehending rights he would otherwise know, thus tolling the statute of limitations, is a question of fact and the trial judge erred in negating plaintiff's insanity on the basis of affidavits and depositions without a trial hearing.

3. LIMITATION OF ACTIONS—TOLLING STATUTE—INSANITY—COMPREHENSION OF RIGHTS—EVIDENCE.

Obtaining workmen's compensation and social security benefits and having consulted physicians and a lawyer do not incontrovertibly establish that one is able to comprehend rights he is otherwise bound to know for the purpose of determining if the statute of limitations has been tolled by a plaintiff's insanity so the matter may be disposed of without a hearing (MCLA 600.5851).

4. PRODUCTS LIABILITY—PRIVITY—NEGLIGENCE.

Under Alabama law privity is required in a breach of warranty dispute and strict liability has not yet been recognized as a

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur 2d, Limitation of Actions § 144.
[1–3] Time of existence of mental incompetency which will prevent or suspend running of statute of limitations, 41 ALR2d 726.
[2] 51 Am Jur 2d, Limitation of Actions §§ 187, 190.
[3] 51 Am Jur 2d, Limitation of Actions §§ 187, 486.
[4] 63 Am Jur 2d, Products Liability § 159 *et seq.*
[5] 57 Am Jur 2d, Negligence §§ 6, 295.

separate common-law cause of action, but privity is not required in an action for negligence in the design or manufacture of a product.

5. Negligence—Contributory Negligence—Determination—Knowledge of Obvious Danger.

   Summary judgment was improper to determine whether use of a forklift truck required in the course of employment constituted contributory negligence even though the operator knew that the truck did not have a canopy or guard; whether the operator exercised due care should be resolved by the trier of fact.

Appeal from Berrien, Julian E. Hughes, J. Submitted Division 3 November 4, 1972, at Grand Rapids. (Docket No. 10825.) Decided August 28, 1972. Leave to appeal denied, 388 Mich 801.

Complaint by Listeon Hill against Clark Equipment Company for negligence and breach of implied warranty. Summary and accelerated judgment for defendant. Plaintiff appeals. Reversed and remanded for trial.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiff.

*Cholette, Perkins & Buchanan (by Edward D. Wells),* for defendant.

Before: R. B. Burns, P. J., and Levin and T. M. Burns, JJ.

Levin, J. The plaintiff, Listeon Hill, appeals from a summary and accelerated judgment dismissing the complaint which he filed against the defendant, Clark Equipment Company.

Hill was seriously injured when a heavy bale of cardboard fell on him while he was stacking bales of cardboard with a forklift truck manufactured by

Clark. He received workmen's compensation benefits. He seeks by this lawsuit to recover damages from Clark on the ground that its failure to equip the truck with a steel canopy or guard to protect the driver against such a mishap constituted negligence (Count I), reckless disregard for the safety of another or gross negligence (Count II), a breach of implied warranty (Count III), and a breach of the manufacturer's strict liability to the consumer (Count IV).

The accident occurred in Alabama. *Abendschein v Farrell,* 382 Mich 510 (1969),[1] obliges us to apply the *lex loci*—in this case, the substantive law of Alabama. The Uniform Statute of Limitations on Foreign Claims Act (MCLA 600.5861; MSA 27A.5861) obliges us to apply the Alabama statutes of limitations because under that enactment of the Michigan Legislature the limitational period prescribed by the law of the place where the claim accrued or by the law of Michigan—whichever bars the claim—controls.

The accident occurred on October 4, 1963. This action was commenced on September 26, 1966.

Michigan prescribes a three-year period for bringing an action to recover damages for personal injuries.[2] Alabama allows one year.[3] The Alabama period is shorter. Therefore, under the uniform act Alabama's one-year statute governs.

Hill's lawyer counters saying that Hill was insane when the claim accrued and, therefore, the statute was tolled.[4]

---

[1] *Cf.* Kuhne, *Choice of Law in Products Liability,* 60 Cal L Rev 1 (1972).

[2] MCLA 600.5805; MSA 27A.5805.

[3] Code of Alabama, Title 7, § 26.

[4] Hill makes an alternative contention in regard to Count II which we do not decide in view of our disposition of his principal contention.

# I

Under Alabama,[5] as well as under Michigan,[6] law the insanity of the plaintiff at the time the claim accrues tolls the running of the statutes of limitations. The term "insanity", as used in such a statute, includes traumatic insanity, and specifically insanity which arises at the same time that the plaintiff's claim against the defendant accrues. See *Alabama Power Co v Shaw*, 215 Ala 436, 440; 111 So 17, 20 (1926), where the Supreme Court of Alabama declared:

"The insanity here insisted upon comes within the definition of traumatic insanity as set forth in 32 Corpus Juris, p 602, as follows:

" ' "Traumatic insanity" is such as results from a wound or injury, particularly to the head or brain, such as fracture of the skull or concussion of the brain.'

"As the word 'insanity' appears in section 8960[7] of our Code, it is unexplained and unlimited. Viewing the purpose of the statute and the broad and comprehensive meaning of the word, we are of the opinion that it embraces a temporary unsoundness of mind as indicated by the proof, and is not to be confined to chronic or fixed condition."

Recently in *Davidson v Baker-Vander Veen Construction Co,* 35 Mich App 293, 305–307 (1971), we ruled that whether a plaintiff is insane for the purposes of tolling a statute of limitation is a question ordinarily to be decided by the trier of fact, and that the trial judge in that case had erred in resolving that disputed question on affidavits and other papers without a trial. Here, paralleling *Davidson,* Clark offered no evidence, by

---

[5] Code of Alabama, Title 7, § 36.

[6] MCLA 600.5851; MSA 27A.5851.

[7] Now Code of Alabama, Title 7, § 36.

affidavit or otherwise, in support of its contention that Hill was not insane, relying entirely on Hill's deposition and the affidavit of Hill's doctor.

Our observations in *Davidson* are again pertinent:

"[E]ven when the evidence and underlying facts are not in dispute, there may still be a qualitative judgment concerning the significance and meaning of the underlying facts. Such questions or judgmental facts are sometimes called 'mixed questions of law and fact' or 'ultimate facts'. If the qualitative judgment is in dispute, then the ultimate fact is generally a disputed question of fact. * * *

"The question here presented * * * involves a value judgment of the kind we generally entrust to the trier of fact in recognition of our inability to crystalize an omniscient rule which would eliminate the need to make a case-by-case appraisal in applying the general standard to the specific facts at hand. * * *

"The averments in the affidavits submitted in Joe Davidson's behalf provide a more than adequate basis upon which a trier of fact could infer and conclude that he was suffering from a mental derangement such as would prevent him from comprehending rights he otherwise is bound to know. Whether inferences or conclusions favorable to Davidson's contention should be drawn from such averments is a matter entrusted to the trier of fact and not to be decided summarily as a matter of law. Decision requires an appraisal and an exercise of judgment concerning the extent of his mental infirmity. It is not a question on which all reasonable men would necessarily reach the same conclusion."

A physician, who examined Hill in 1967, averred on affidavit:

"8. That the said Listeon Hill, as a result of the trauma sustained in said accident, received a serious injury to his spinal column; that he sustained a crushed and fractured cervical vertabrae and a severe contusion to the spinal cord, which resulted in complete and

permanent paralysis (quadripledgia) from the neck down; that he has suffered from periodic blackouts and spells of dizziness since said accident, and his mental state, as a result of his physical condition and said trauma, has been abnormal; that he has suffered certain losses of memory; that during his initial hospitalization, he was unconscious much of the time, advised that he could not see or hear, and talked out of his head.

"9. His history reflects a ninth grade education with all his abilities to earn his living derived from employment requiring physical strength, and that he has been totally disabled since his accident.

"10. That on the basis of his examination of said patient and a review of the medical and hospital records of said patient and his knowledge of psychiatry your deponent is of the opinion that Listeon Hill, following his injury of October 4, 1963, suffered some intellectual impairment consistent with a diagnosis of chronic brain syndrome probably related to his injury of October 4, 1963, and this impairment of his intellect that existed at the time of my examination was present at all times after his accident."

Hill was deposed on August 22, 1968. He testified that he was knocked unconscious by the bale that hit him, came to, and was taken to the hospital. His neck had been broken and thongs (weights) were placed on his head. His injury was such that sometimes he could not see members of his family who came to visit him at the hospital. After the first week he was in the hospital he began having frequent blackout spells, several hours in duration. He stayed in the hospital for three months, and then for eight or nine months at a rehabilitation center. When he was discharged from the rehabilitation center he was transported to his brother's home where he has resided. He has been in and out of hospitals since he was discharged from the rehabilitation center;

the employees of these hospitals gave him pain pills, shots, x-rayed him and gave him exercises. He was still taking pain pills and other medicine daily, and experiencing blackout spells.

The question before the judge was whether Hill was insane at the time his claim accrued, and, specifically, did he, by reason of the accident, at that time suffer from an unsound deranged condition of the mind[8] barring him "from comprehending rights he is otherwise bound to know"[9] and, if so, had he recovered from that debility more than one year before this action was commenced.[10] And, even more particularly, was there a genuine issue on this question to be submitted to the trier of fact chosen by Hill—a jury.

In ruling against Hill, the judge declared that he relied on Hill's admission on deposition that over a year before this action was commenced he had arranged "for social security payments, workmen's compensation payments, a power of attorney, and hired an attorney to pursue the present action". The judge said that, "These actions appear to me to conclusively negate a type of 'insanity' which would bar him from comprehending rights he is otherwise bound to know". The record shows:

—During the taking of Hill's deposition he was asked whether he had received workmen's compensation benefits. He responded, "They put me under workmen's compensation 21 days after I was hurt. So my brother told me". He did not sign anything to obtain workmen's compensation benefits. He just received a check and continued receiv-

---

[8] *See Alabama Power Co v Shaw*, 215 Ala 436; 111 So 17 (1926).

[9] *See Valisano v Chicago & N W R Co*, 247 Mich 301, 304 (1929).

[10] Under Alabama law, the time allowed for bringing the action after the disability terminates is three years or the limitational period otherwise applicable, whichever is the shorter period of time. Code of Alabama, Title 7, § 36.

ing them. His brother endorses his checks because of his disability. He did not give his brother any written authority to endorse the checks. He did not know what a power of attorney is. He had told his Dad to go to a Justice of the Peace and the Justice of the Peace would make it possible "where he could carry on all of my business without I give my signature and he can go and sign my checks and carry on my business or anything like that. That is the Justice of the Peace".

—An agent from the Social Security Administration visited him at the rehabilitation center, talked to him "and explained it". The agent filled out some papers "and gave me a pen and helped me write my name".

—He said variously that he had first spoken to a lawyer about a year before his deposition was taken on August 22, 1968, and later that he would say he spoke to a lawyer in January or February, 1965 or in the latter part of 1964. There is nothing in the record concerning the nature of the discussion between Hill and the lawyer, nor does it appear who—Hill or someone else—arranged for the consultation.

Again, what we said in *Davidson* is relevant (p 301):

"We are not prepared to say that ability to retain a lawyer is conclusive evidence of mental competence for the purpose of this tolling provision. * * * The fact that he retained counsel is some evidence that he was not mentally deranged, but it does not conclusively establish that fact."

While Hill obtained workmen's compensation and social security benefits and was able to consult physicians and a lawyer, that does not establish incontrovertibly—so that the matter could be dis-

posed of without a trial hearing—either that he did not, at the time the claim accrued, suffer from an unsound deranged condition of the mind barring him from comprehending rights he is otherwise bound to know, or that he had recovered from any such debility more than one year before this action was commenced.

## II

Clark claims that it is entitled to prevail in all events because Alabama still requires that there be privity between the manufacturer and the consumer.

Product liability litigation in Alabama, at least before the Uniform Commercial Code was enacted and became, on December 31, 1966, effective in that state, appears to have been based largely, perhaps entirely, on the law of negligence.[11]

The Alabama Supreme Court has, indeed, as Clark contends, recently reiterated its adherence to the concept that privity is required to maintain an action based on breach of warranty.[12] But privity need not be shown where the plaintiff proceeds on a negligence theory.[13]

It, accordingly, appears that under Alabama law Hill cannot maintain an action under Count III, breach of warranty, but that he can maintain his action under Counts I and II which are based on claims of negligence and gross negligence. Count IV, strict liability, is another matter; although this theory of liability is sometimes referred to as strict

---

[11] See *Harnischfeger Corp v Harris,* 280 Ala 93; 190 So 2d 286 (1966); *Sears, Roebuck & Co v Morris,* 273 Ala 218; 136 So 2d 883 (1961); *Greyhound Corp v Brown,* 269 Ala 520; 113 So 2d 916 (1959).

[12] See *Harnischfeger Corp v Harris, supra.*

[13] See *Harnischfeger Corp v Harris, supra; Sears, Roebuck & Co v Morris, supra; Greyhound Corp v Brown, supra.*

liability in tort, the theory sounds in both contract and tort. It does not appear that Alabama has as yet recognized as a separate common-law cause of action what has come to be known as strict liability, or at least the parties have not cited any authority indicating that it has.

We do not know enough about Alabama law and practice to determine to what extent the results in Alabama cases tried on a negligence theory differ from the results in cases tried under Michigan law, and the extent any such difference may be attributable to the legal theories—negligence, reckless disregard of plaintiff's safety, warranty, strict liability—set forth in the plaintiff's complaint (see, *e.g., Greyhound Corp v Brown,* 269 Ala 520; 113 So 2d 916 [1959]; *Norton Co v Harrelson,* 278 Ala 85; 176 So 2d 18 [1965]. *Cf. Cova v Harley Davidson Motor Co,* 26 Mich App 602 [1970]). Until we are better informed about Alabama product liability law and the consequences of enforcing that law in actions commenced in this state, we refrain from any declaration whether there is any merit in Hill's contention that the public policy of this state would be offended by applying that law in this forum.

### III

Clark lastly contends that it is entitled to prevail because the design defect—the absence of a canopy or guard—was obvious to Hill.

There is no controlling Alabama authority. Since the product liability law of Alabama is rooted in the law of negligence, it would appear that the following formulation in the Restatement of Torts is applicable:

"One who supplies directly or through a third person

a chattel for another's use, knowing or having reason to know that the chattel is unlikely to be made reasonably safe before being put to a use which the supplier should expect it to be put, is subject to liability for physical harm caused by such use to those whom the supplier should expect to use the chattel or to be endangered by its probable use, and who are ignorant of the dangerous character of the chattel *or whose knowledge thereof does not make them contributorily negligent,* although the supplier has informed the other for whose use the chattel is supplied of its dangerous character." 2 Restatement Torts, 2d, § 389, p 311. (Emphasis supplied.)

Professors Harper and James in their treatise on the law of torts have said that it would carry things too far, "if the law of negligence is to be applied", to hold that there is no duty to guard against injury from a patent peril or from a source manifestly dangerous. They continue:

"The problem is really a phase of the one discussed above concerning the adequacy of full disclosure of a danger by the supplier. Here again, under negligence principles the question would still remain whether unreasonable hazard is to be anticipated from the use of the article even though its dangerous condition is manifest. In an earlier day the test of ordinary care was applied only to the manufacturer of 'inherently dangerous' articles, and these were narrowly defined as including only such things as food, drink, poisons and explosives. Against the dangers of machinery, the maker owed no duty of care, but only the duty to disclose latent perils known to him. '[T]he action against [him] * * * proceed[ed] * * * and * * * [was] founded on the fact, that in selling the article he practiced fraud and deceit in concealing the defects * * * .' In such a context 'of course' when it appeared that the purchaser knew of the danger 'the bottom drop[ped] out of the case against the maker * * * ,' as the Kentucky court quite logically pointed out. Today, however, the negligence principle has been widely accepted in products liability cases; and the bottom does not logically drop

out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition. * * * Under this analysis the obviousness of a condition will still preclude liability if the obviousness justifies the conclusion that the condition is not unreasonably dangerous; otherwise it would simply be a factor to consider on the issue of negligence.

"It must be conceded that there are a good many statements and some decisions at variance with this position. The actual decisions concern situations where the plaintiff has voluntarily exposed himself to the peril, but some of the statements broadly deny a duty where the peril is not concealed. It is submitted that such a rule is a vestigial carryover from pre-*MacPherson [MacPherson v Buick Motor Co,* 217 NY 382; 111 NE 1050 (1916)] days when deceit was needed for recovery. It is not to be found in the Restatement, which adopts the negligence approach. There is certainly no general rule that a danger must be concealed to be a ground of negligence. A defect in the highway, a pit next to the sidewalk, or a defective stairway in the common approach to an apartment house does not cease to be unreasonably dangerous simply because it is obvious or well known. And, as we have seen, where the supplier's duty is thought of as one to take care, his disclosure of a dangerous defect does not always satisfy that duty." 2 Harper & James, Law of Torts, § 28.5, pp 1542–1544.[14]

Hill was obliged to use the forklift truck in his employment. Whether his use of the truck, although he knew it did not have a canopy or guard, constituted contributory negligence would appear to be a question to be resolved by the trier of fact. *Cf. Byrnes v Economic Machinery Co,* 41 Mich App 192 (1972); *Sears, Roebuck & Co v Morris,* 273 Ala 218, 223; 136 So 2d 883, 886 (1962).[15]

---

[14] *See, also,* comment to § 28.5, n 2 in Supplement to Vol 2, Harper & James, Law of Torts, p 215.

[15] *Fisher v Johnson Milk Co,* 383 Mich 158 (1970), is not controlling because it is distinguishable on its facts and because Michigan case law requires us to apply the law of Alabama.

A summary judgment on this issue could not properly be granted.

Reversed and remanded for trial. Costs to plaintiff.

All concurred.