## LEMMERMAN v FEALK

## WILLIFORD v BIESKE

Docket Nos. 97839, 97841, 98365. Argued January 12, 1995 (Calendar Nos. 7-8). Decided July 5, 1995. Rehearing denied in *Williford*, 450 Mich 1211.

Marlene Lemmerman brought an action in the Oakland Circuit Court against the estate of Benjamin Fealk, her deceased father, Bella Fealk, her mother, and Rachel Levy, her aunt, alleging assault and battery and intentional infliction of emotional distress by all the defendants, negligence by her mother and father, and sexual and physical abuse by her father and aunt for ten years, beginning when she was three. The plaintiff claimed that she was unable to file the action within the applicable period of limitation because she had repressed the memory of abuse. The court, Robert L. Templin, J., dismissed the case, finding that the insanity disability grace period of MCL 600.5851; MSA 27A.5851 did not toll the statute of limitations because the plaintiff lacked corroboration of allegations of abuse. The Court of Appeals, JANSEN, P.J., and MURPHY and MARILYN KELLY, JJ., reversed, holding that the discovery rule was applicable to determine whether the cause of action accrued, and that when the plaintiff knew or should have known that she had a cause of action was a question of fact. The Court further found that MCL 600.5851; MSA 27A.5851 was applicable because there were questions of fact regarding whether she suffered from insanity and, if she did, when that disability had been removed. It ruled that corroboration was not necessary under either theory (Docket No. 131850). The defendants appeal.

Gale Williford brought an action in the Macomb Circuit Court against Irwin Bieske, her father, for assault and battery from age five throughout her adolescence, alleging that he had repeatedly sexually abused her and forced her into prostitution. The plaintiff claims that she regressed into another state of mind as a means of escape and, as a consequence, repressed memory of the abuse until the memory was revived during psychological therapy. The court, Michael D. Schwartz, J., initially denied the defendant's motion for summary disposition

pending discovery. On reconsideration, it found that the action could survive summary disposition under MCL 600.5851; MSA 27A.5851 if corroborating evidence of the allegations was uncovered during discovery. The Court of Appeals, McDONALD, P.J., and D. E. HOLBROOK, JR., and MURPHY, JJ., denied leave to appeal in an unpublished order (Docket No. 168619). The defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice BRICKLEY, and Justices LEVIN, CAVANAGH, and MALLETT, the Supreme Court *held:*

Neither the discovery rule nor the statutory grace period applied to persons suffering from insanity extends the limitation period for bringing tort actions based on childhood sexual abuse allegedly delayed because of repression of memory.

1. Statutes of limitation are intended to encourage plaintiffs to pursue claims diligently and to protect defendants from having to defend against stale and fraudulent claims. The tension between the need to protect against stale claims and the injustice of precluding some claims requires application of a discovery rule when a plaintiff would otherwise be denied a reasonable opportunity to bring suit because of the latent nature of an injury or an inability to discover the causal connection between the injury and the defendant's breach of duty owed to the plaintiff. Where the discovery rule is appropriate, a claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered an injury and the causal connection between the injury and the defendant's breach of duty.

2. In those cases in which application of the discovery rule has been considered, the benefit of application of the rule to the plaintiff has been weighed against the harm the exception would visit on the defendant and the important policies underpinning the applicable statute of limitations. Balancing of plaintiff's and defendant's interests is facilitated where there is objective evidence of injury and causal connection and a verifiable basis for the plaintiff's inability to bring a claim within the limitation period. The presence of this external standard addresses the concern for reliable fact finding that is the underlying rationale for precluding untimely claims. The discovery rule has been applied only when the risk of stale claims is outweighed by the unfairness of precluding justified causes of action. As a threshold, such risk can only be outweighed when objective, verifiable evidence of the original wrongful act and the resulting physical injury is present.

3. MCL 600.5851(1); MSA 27A.5851(1) allows a person who is

entitled to bring a cause of action, but is insane when the claim accrues, a one-year grace period after the disability is removed to file suit, even though the limitation period for the action has run. For purposes of the statute, insanity is defined as a mental derangement preventing the sufferer from comprehending rights a person otherwise is bound to know. Claims of insanity generally have been treated as questions of fact unless it is incontrovertibly established either that the plaintiff did not suffer from insanity at the time the claim accrued or had recovered from such a disability more than one year before the commencement of the action. The critical issue in determining whether to allow claims to survive either by way of the common-law discovery rule or the statutory disability grace period is whether the overarching policy goals normally protected by the statute of limitations remain inviolate, i.e., there must be some indicia of assurance of reliable fact finding.

4. In these cases, application of the discovery rule and insanity grace period would endanger the policy goals advanced by the statute of limitations. The absence of verifiable evidence creates circumstances that would be unfavorable to a just examination and decision and would increase the danger of the assertion of fraudulent or speculative claims. While it is proper to apply the discovery rule in cases in which the objective nature of the evidence makes it substantially certain that the facts can be fairly determined, even though considerable time has passed since the alleged events occurred, such circumstances do not exist where a plaintiff brings an action based solely on an alleged recollection of events that were repressed and there is no means of independently verifying the allegations in whole or in part. Placing a plaintiff in a discretionary position to allege the onset of the disability of repressed memory and the termination of that condition within an applicable grace period would vitiate the statute of limitations as a defense.

5. Absent subsequent legislative action, the discovery rule and the insanity grace period are not presently available to extend the limitation period for repressed memory tort actions, even upon presentation of allegedly objective and verifiable evidence of a plaintiff's claim. The presence of merely corroborative evidence does not adequately protect the interests addressed by the statute of limitations or bring these cases within the zone of comfort occupied by those cases in which the limitation period has been extended either through the discovery rule or insanity grace period. In these cases, both the existence of injury and the existence and reliability of any

evidence of a causal link to the defendants remain highly disputed, and the outcome must ultimately turn on one person's word against another. While the plaintiffs' allegations may be true, the assurance of a just examination and decision regarding the relevant issues in such a situation is highly problematic. It cannot be concluded with any reasonable degree of confidence that factfinders could fairly and reliably resolve the questions before them, given the state of the art regarding repressed memory and the absence of objective verification.

6. The more appropriate forum for resolution of the question whether persons alleging repression of memory of past assaults should be allowed to pursue claims against their accused attacker is the legislative arena. The Legislature has clearly demonstrated its ability to consider the question of extension of the limitation period for actions based on sexual abuse of children, and act where it deems appropriate.

Justice WEAVER, joined by Justice RILEY, concurring, stated that neither the discovery rule nor the insanity disability statute addresses repressed memory. The key question is whether an allegation of repressed memory syndrome would be deemed by the courts sufficient grounds to say that the plaintiff neither knew nor should have known of the claim. There is no agreement on the viability and reliability of repressed memory syndrome within the American Medical Association or the American Psychiatric Association. In the absence of a consensus on this still-evolving theory from the appropriate medical experts, it would be unwise and premature to recognize the repressed memory syndrome as a basis for applying the discovery rule.

*Lemmerman,* reversed and remanded.

*Williford,* remanded.

201 Mich App 544; 507 NW2d 226 (1993) reversed.

*Lore A. Rogers* for the plaintiff in *Lemmerman.*

*Bruetsch & Associates* (by *Patrick J. Bruetsch* and *Todd A. Kreckman*) for the plaintiff in *Williford.*

*Bruce J. Lazar* for defendant Bella Fealk in *Lemmerman.*

*Martin N. Fealk* for defendant Rachael Levy in *Lemmerman.*

*Lawrence A. Baumgartner, P.C.* (by *Jane R. Ware*), for the defendant in *Williford*.

Amicus Curiae:

*Julie Kunce Field* for Women and the Law Clinic.

BOYLE, J. We are asked in these cases to extend the limitation period for the civil actions brought by plaintiffs who allege they were sexually abused as children by the defendants, but were unable to timely file claims because of repression of the memory of abuse. We must decide whether (1) the discovery rule is applicable to determine the time of accrual of the claims triggering the running of the limitation period for plaintiffs' tort actions of assault and battery, negligence, and intentional infliction of emotional distress, or (2) if the limitation period can be extended by the one-year statutory grace period allowed after removal of the disability of insanity under MCL 600.5851(1); MSA 27A.5851(1).[1]

We hold that neither the discovery rule nor the insanity disability statute addresses the exception claimed to extend the time allowable for bringing suit in these cases. The question of tolling the allowable time for bringing claims allegedly due to repressed memory is appropriately addressed to the Legislature.

The Court of Appeals decision in *Lemmerman* is reversed, and both cases are remanded to the trial

---

[1] The pertinent part of the statute states:

[I]f the person first entitled to make an entry or bring an action under this act is . . . insane at the time the claim accrues, the person . . . shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run.

courts for proceedings consistent with this opinion,
MCR 2.116(C)(7).

I

A

*LEMMERMAN v FEALK*

Plaintiff Marlene Lemmerman alleges that she
was sexually and physically abused by her father
and aunt for approximately ten years, beginning
in 1939, when she was three. Plaintiff asserts that
during the period in which these assaults were
occurring she attempted to tell her mother about
the abuse, but that her mother denied the allega-
tions, took no action to halt the abuse, and on at
least one occasion responded by threatening her
with a pair of scissors. As a coping mechanism,
plaintiff maintains that she developed a second
personality who took her place during the abusive
episodes. It is alleged that this personality dissocia-
tion repressed plaintiff's active memory of the
abuse.

On May 19, 1989, plaintiff alleges to have con-
firmed her knowledge of sexual abuse through a
confrontation with her father, who was a patient
in a psychiatric hospital at the time of the encoun-
ter.[2] Plaintiff alleges that, after several months of
therapy, she realized that the sexual abuse was
not her fault and was thus able to seek legal
redress. Plaintiff's father passed away in May,
1990.

On May 18, 1990, plaintiff filed a complaint in

_____

[2] According to plaintiff's account of this encounter, she showed her
father a picture of herself as a child, and told him he "had done
something very bad to this little girl." Plaintiff's father responded
"I'm sorry. I loved you so much. You were so beautiful—so intelli-
gent." Plaintiff asserts that her father said he was sorry approxi-
mately six times and told her that God would never forgive him.

circuit court against her mother, her father's estate, and her aunt, setting forth allegations of assault and battery and intentional infliction of emotional distress by all defendants, and negligence by her mother and father. Pursuant to a defense motion for summary disposition under MCR 2.116(C)(7), the trial court dismissed the plaintiff's action. The court found the insanity disability grace period provision of MCL 600.5851; MSA 27A.5851 was not available to toll the statute of limitations because plaintiff lacked the corroboration of allegations of abuse required by *Meiers-Post v Schafer,* 170 Mich App 174; 427 NW2d 606 (1988).

On appeal, the Court of Appeals reversed the decision of the trial court. 201 Mich App 544; 507 NW2d 226 (1993). The Court held that the discovery rule was applicable to determine when the plaintiff's cause of action accrued. The Court also found that when the plaintiff knew or should have known that she had a cause of action was a question of fact. *Id.* at 548-553. In addition, the Court found the provisions of MCL 600.5851; MSA 27A.5851 applicable, holding that there were questions of fact regarding whether the plaintiff suffered from insanity and, if she did, when that disability had been removed. 201 Mich App 553-554. The Court found that corroboration was not necessary under either theory. We granted leave to appeal and ordered that the case be argued together with *Williford v Bieske.* 445 Mich 934 (1994).

B

*WILLIFORD v BIESKE*

Plaintiff Gale Williford alleges that her father, Irwin Bieske, repeatedly sexually abused her,

forced her into prostitution, and assaulted and battered her from December, 1942, when the she was five, throughout her adolescence. Plaintiff alleges that she regressed into another state of mind as a means of escaping the abuse and, as a consequence, repressed memory of the abuse until her memory of these acts was revived during psychological therapy sessions in 1992.

On April 19, 1993, plaintiff filed a complaint in circuit court against her father, alleging intentional infliction of emotional distress and assault and battery. Defendant moved for summary disposition, pursuant to MCR 2.116(C)(7), claiming that plaintiff's action was barred by the applicable limitation period because she provided no corroboration of her allegations of sexual assault. The motion was initially denied pending discovery, and on reconsideration the trial court found that plaintiff's action could survive summary disposition under the terms of MCL 600.5851; MSA 27A.5851, if corroborating evidence of the allegations was uncovered during discovery.

Leave to appeal to the Court of Appeals was denied for lack of merit, citing *Lemmerman, supra*.[3] We granted leave to appeal, directing that the case be argued along with *Lemmerman.* 445 Mich 934 (1994).

II

As a general rule, untimely filed tort claims are barred by the statute of limitations. Claims for assault and battery normally must be brought within two years after they accrue, and claims for negligence and intentional infliction of emotional distress must be brought within three years after

---

[3] Unpublished order of the Court of Appeals, issued November 24, 1993 (Docket No. 168619).

they accrue in order to avoid the limitation bar.
MCL 600.5805(2), (8); MSA 27A.5805(2), (8). A
claim accrues "at the time the wrong upon which
the claim is based was done regardless of the time
when . damage results." MCL 600.5827; MSA
27A.5827. The time of the wrong triggering the
running of the limitation period is the date a
plaintiff's injury results from a breach of duty.
*Larson v Johns-Manville Sales Corp,* 427 Mich 301,
309; 399 NW2d 1 (1986) (citation omitted).[4]

The statute of limitations bars plaintiffs' claims
in the instant cases, absent some exception, be-
cause the assaults are alleged to have occurred
some forty to fifty years ago. Such assaults would
inflict immediate damage on the children so
abused.[5] Subsequent damage arising after the ini-
tial assaults would not give rise to a new cause of
action or renew the running of the limitation
period. *Larson, supra* at 315-316.[6]

Plaintiffs claim that the statute of limitations is
tolled because either the discovery rule or the
insanity disability grace period serves to extend
the limitation period for claims by adults of child-

[4] Once an injury has resulted from a breach of duty, all the
elements necessary for an action in tort are usually present. "Gener-
ally, a well-pleaded claim for personal injury must allege that (1) the
defendant owed the plaintiff a legal duty, (2) the defendant breached
that duty, (3) the defendant's breach was the proximate cause of the
plaintiff's injury, and (4) damage." *Moll v Abbott Laboratories,* 444
Mich 1, 16; 506 NW2d 816 (1993).

[5] While MCL 600.5851(1); MSA 27A.5851(1), inter alia, allows a
person who is under the age of eighteen at the time a claim accrues
one year after reaching that age to bring an action, this grace period
does not affect the timeliness of the present actions. Both plaintiffs
were past the age where this provision of the statute was of conse-
quence when they filed their complaints.

[6] No allegations are presented in these cases for consideration of
uncertain future consequences from the assaults that would warrant
taking plaintiffs' actions out of this general rule. *Id.* at 316-319. We
emphasized in *Larson,* in which we adopted such a rule for certain
asbestos-related injuries, "that the rule we develop in this case for
subsequent damages is premised on the unique nature of the asbestos
situation and is not applicable in other areas." *Id.* at 319-320.

hood sexual abuse that has been repressed from the victims' active memories. For reasons discussed below, we find that neither the discovery rule, which has been developed through our common-law authority, nor the statutory exception appropriately applies to extend the period for filing suit in this context.

A

The policy goals underlying statutes of limitation are well established:

> [Statutes of limitation] encourage the prompt recovery of damages; they penalize plaintiffs who have not been industrious in pursuing their claims; they "afford security against stale demands when the circumstances would be unfavorable to a just examination and decision"; they relieve defendants of the prolonged fear of litigation; they prevent fraudulent claims from being asserted; and they " 'remedy . . . the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.' " [*Lothian v Detroit,* 414 Mich 160, 166-167; 324 NW2d 9 (1982). Citations omitted.]

"In summary, the primary purposes behind statutes of limitations are: 1) to encourage plaintiffs to pursue claims diligently, and 2) to protect defendants from having to defend against stale and fraudulent claims." *Larson, supra* at 311.

Despite the importance of these goals, we have recognized that the tension between the need to protect against stale claims and the injustice of precluding some claims requires application of a discovery rule in certain circumstances. When a plaintiff would otherwise be denied a reasonable opportunity to bring suit because of the latent nature of the injury or the inability to discover the

causal connection between the injury and the defendant's breach of duty owed to the plaintiff, we have applied the discovery rule to prevent unjust results. "[B]ecause statutes of limitation do not evidence a legislative intent to extinguish a cause of action before the plaintiff is aware of the possible cause of action, we have adopted the discovery rule in the appropriate instances." *Chase v Sabin,* 445 Mich 190, 196; 516 NW2d 60 (1994).

Where the discovery rule is found to be appropriate, a "plaintiff's claim accrues when the plaintiff discovers, or through the exercise of reasonable diligence, should have discovered . . . (1) an injury, and (2) the causal connection between plaintiff's injury and the defendant's breach [of duty to the plaintiff]." *Moll v Abbott Laboratories,* 444 Mich 1, 16; 506 NW2d 816 (1993).

"This Court has recognized specific situations in which the discovery rule must be utilized to prevent unjust results." *Id.* at 17. We have found such situations present, e.g., where there has been a negligence action brought against a hospital and its agent before statutory characterization of such negligence as medical malpractice, *Chase, supra,* in pharmaceutical products liability actions, *Moll, supra,* and in asbestos-related products liability actions, *Larson, supra.* In each of those cases, we have weighed the benefit of application of the discovery rule to the plaintiff against the harm this exception would visit on the defendant and the important policies underpinning the applicable statute of limitations. Balancing is facilitated where there is objective evidence of injury and causal connection guarding against the danger of stale claims and a verifiable basis for the plaintiffs' inability to bring their claims within the statuto-

rily proscribed limitation period.[7] Thus, in *Chase, supra* at 197-199, we noted that the plaintiff's negligence action based on treatment received in 1963 would now be characterized as a medical malpractice action to which we had previously applied the discovery rule. In addition, while the plaintiff's claim was stale, the defendants generally controlled the medical records that constituted the evidence on which the plaintiff would generally rely and were "in a superior position to recognize the occurrence of a negligent act." *Id.* at 200. In *Moll, supra* at 14-15 (quoting *Bonney v Upjohn Co,* 129 Mich App 18, 33-34; 342 NW2d 551 [1983]), we also noted the superior position of drug manufacturers in discovering dangers inherent in the use of their products. Also counseling in favor of application of the discovery rule was the documentary, and thus continuously reliable, nature of most relevant evidence in pharmaceutical products liability cases and the increase in knowledge in the scientific community regarding the causal relationship between certain drugs and injury or disease that occurred over time. Finally, in *Larson, supra* at 311-313, we applied the discovery rule to asbestos-based products liability actions because the latent nature of asbestos injuries made it

[7] In *Chase, supra* at 193-194, the plaintiff lost his eye one year after cataract surgery in 1963. The plaintiff had never been informed of difficulty during the eye surgery, but in 1988 plaintiff's counsel discovered evidence of possible negligence in the administration of anesthesia and consequential damage to the eye in hospital records of the surgery. In *Moll, supra* at 6-11, the plaintiffs discovered reproductive problems as adults that were possibly linked to exposure to diethylstilbestrol (DES) manufactured by the defendants and prescribed to their mothers when pregnant. The plaintiffs had no knowledge of their mothers' ingestion of the drug until they were adults. The more difficult issue in *Moll* was determination of the time when the plaintiffs discovered their injury and the possible causal link between that injury and their exposure to DES. *Larson, supra* at 305-307, concerned wrongful death actions related to exposure to asbestos. The diseases related to such exposure have a latency period between exposure and the development of the diseases of ten to forty years.

difficult for plaintiffs to diligently pursue their claims, while the longer period in which defendants were vulnerable to suit did not make it appreciably more difficult for them to defend.

In those instances in which we have applied the common-law discovery rule to extend the statute of limitations, the dispute between parties has been based on evaluation of a factual, tangible consequence of action by the defendant, measured against an objective external standard. The presence of this external standard addresses the concern for reliable fact finding that is the underlying rationale for precluding untimely claims. Unlike the present claims, where liability must be determined solely by reference to one person's version of what happened as against another's, the factfinder's determination of liability is measured against an objective standard of care, such as the standard of care in the relevant profession or industry, at the time of the injury. Thus, despite the passage of time, an objective standard can be recreated for evaluation by the factfinder. In such contexts, confidence in the outcome does not hinge on whether a defendant remembered the particular operation resulting in the plaintiff's claim of malpractice, or whether the individuals who exposed product liability plaintiffs to latent injuries are still available to explain their decisions.

A number of other jurisdictions have recently considered the propriety of the application of the discovery rule to cases in which the plaintiffs have claimed inability to pursue tort actions on the basis of alleged sexual assault as a result of repressed memory of the events.[8] A growing collection of the legal literature has also addressed the

---

[8] See anno: *Running of limitations against action for civil damages for sexual abuse of child,* 9 ALR5th 321.

limitation problem.[9] From these sources, we find particularly pertinent to our conclusion the decision in *Tyson v Tyson,* 107 Wash 2d 72; 727 P2d 226 (1986) (superseded by statute, see Wash Rev Code Ann 4.16.340).

In *Tyson,* the Washington court was confronted with a request from a twenty-six-year-old plaintiff to apply the discovery rule to preserve her tort claims. These claims arose out of alleged sexual assaults by her father that occurred when she was between the ages of three and eleven. The court cautioned that "[t]he discovery rule should be adopted only when the risk of stale claims is outweighed by the unfairness of precluding justified causes of action." *Id.* at 76. In examining past application of the discovery rule, the court noted that, as a threshold, such risk can only be outweighed when "objective, verifiable evidence of the original wrongful act and the resulting physical injury" is present. *Id.* In explaining the rationale for the need for such evidence, the court stated that

> [b]ecause of the availability and trustworthiness of objective, verifiable evidence in [cases applying the discovery rule], the claims were neither speculative nor incapable of proof. Since the evidentiary problems which the statute of limitations is designed to prevent did not exist or were reduced, it was reasonable to extend the period for bringing the actions. [*Id.* at 77.]

The Washington court declined to extend the

---

[9] See, e.g., Ernsdorff & Loftus, *Let sleeping memories lie? Words of caution about tolling the statute of limitations in cases of memory repression,* 84 J Crim L & Criminology 129 (1993); comment, *Adult survivors of childhood sexual abuse and the statute of limitations: The need for consistent application of the delayed discovery rule,* 20 Pepperdine L R 1359 (1993); note, *Easing access to the courts for incest victims: Toward an equitable application of the delayed discovery rule,* 100 Yale L J 2189 (1991).

discovery rule to repressed memory cases because of the absence of "empirical, verifiable evidence" of the "occurrences and resulting harm" alleged by the plaintiff. *Id.*

B

Plaintiffs assert that in addition to delaying accrual of their causes of action through use of the discovery rule, the insanity provision of our statute providing a grace period for bringing action after certain disabilities are removed also applies to delay the limitation period applicable to their claims. Pursuant to MCL 600.5851(1); MSA 27A.5851(1), inter alia, a person who is entitled to bring a cause of action, but is insane when the claim accrues, is allowed a one-year grace period after the disability is removed to file suit, even though the limitation period for that action has run. Insanity is defined for purposes of the statute to mean "a mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know . . . ." MCL 600.5851(2); MSA 27A.5851(2).[10]

Although the definition of "insanity" provided in the statute was adopted from an earlier opinion of this Court, *Valisano v Chicago & NW R Co*, 247 Mich 301, 304; 225 NW 607 (1929),[11] we have had little opportunity to consider the reach of the disability grace period as it applies to the disability of insanity.[12] Most other jurisdictions consider-

---

[10] The disability must exist at the time of accrual of the claim, and successive liabilities cannot be tacked. MCL 600.5851(3), (4); MSA 27A.5851(3), (4).

[11] The definition of "insanity" added to § 5851 by amendment, 1961 PA 236, § 5851, is in conformity with the definition in *Valisano*. See MSA 27A.5851, Committee Notes, pp 205-206.

[12] *Valisano* was decided on the basis of res judicata and election of remedy. *Id.* Therefore, this Court had no occasion to analyze the

ing the question have rejected claims of repressed memory as constituting insanity for purposes of tolling the statute of limitations. Anno: *Running of limitations against action for civil damages for sexual abuse of child,* 9 ALR5th 321, § 11, pp 353-359. Lower courts in this state have generally treated claims of insanity in order to avoid limitation periods as questions of fact "unless it is incontrovertibly established either that the plaintiff did not suffer from insanity at the time the claim accrued or that he had recovered from any such disability more than one year before he commenced his action." *Makarow v Volkswagen,* 157 Mich App 401, 407; 403 NW2d 563 (1987). See also *Hill v Clark Equipment Co,* 42 Mich App 405; 202 NW2d 530 (1972); *Davidson v Baker-Vander Veen Construction Co,* 35 Mich App 293; 192 NW2d 312 (1971).

In *Makarow,* the plaintiff was injured in an automobile accident in New York and filed a products liability action in Michigan against the automobile manufacturer more than five years after the accident. The manufacturer responded to plaintiff's claim by filing a motion for accelerated judgment on the basis, inter alia, of the filing of the action outside the applicable limitation period. *Id.* at 405. The plaintiff answered that he had been unable to bring his claim earlier because his accident-based insanity at the time of accrual had rendered him unable to work with his retained attorneys to pursue any legal rights he might have had against the defendant. *Id.* at 407. The Court of Appeals held that, although the plaintiff's assertions of insanity were sufficient to require denial of the defendant's motion under Michigan's statutory insanity grace period, our borrowing statute

merits of the plaintiff's claim under the definition of insanity provided.

required consideration of the tolling provisions of the state of New York, where the accident occurred. *Id.* at 410-412. Under that state's insanity tolling provision, as a matter of law, the plaintiff was not insane because there was no evidence that he "suffered from an overall inability to function in society." *Id.* at 414.

In *Hill,* the plaintiff was injured when a heavy bale of cardboard fell on him while stacking bales with a forklift manufactured by the defendant. The plaintiff commenced his personal injury action against the defendant, alleging ordinary and gross negligence, breach of implied warranty, and strict liability, almost three years after the accident. He asserted that his claims should be allowed under the statutory insanity grace period because he had suffered from a condition of traumatic insanity due to the accident at the time of accrual, causing him to be unable to comprehend or assist his retained attorney in asserting any cause of action against the defendant.[13] *Id.* at 407. The Court acknowledged that the plaintiff had been able to secure social security and worker's compensation benefits and spoke to an attorney over a year before commencing the action against the defendant. Evidence was presented, however, suggesting that arrangement for benefits had been made by others on the plaintiff's behalf. There was nothing in the record regarding the nature of the plaintiff's discussions with the attorney, and the defendant offered no evidence supporting its claim that the plaintiff was sane. *Id.* at 408, 411-412. On the basis of this evidence, the Court of Appeals found that the question of the plaintiff's sanity was a disputed question of fact.

---

[13] Because the accident occurred in Alabama, the Court of Appeals found that Alabama's one-year limitation period for plaintiff's personal injury claims applied. *Id.* at 407.

In *Davidson,* the plaintiff was also injured in a work-related accident. He commenced an action within the applicable limitation period, alleging negligence in the application of acid to the walls and floor of a school, but sought to add several defendants over four years after suffering injury. Two of the added defendants sought accelerated judgment on the basis of the failure to commence action against them within the applicable limitation period. *Id.* at 296-297. The plaintiff responded that he suffered from a lifelong mental infirmity that had precluded his ability to comprehend possible action against the added defendants. *Id.* at 298-299. The Court of Appeals again criticized the defendants for failing to present evidence supporting their allegation of sanity and refused to find that retention of an attorney was conclusive proof of the plaintiff's ability to comprehend his rights. *Id.* at 300-301. The Court noted that affidavits had been filed on the plaintiff's behalf suggesting, inter alia, that the plaintiff was "unable to attend to personal and business affairs," that "it was necessary to explain to him matters the ordinary person would understand," and that "he was unable to comprehend simple legal procedures." *Id.* at 298. On the basis of the proofs presented, the Court concluded that the plaintiff's insanity, as defined by the statute, was a question of fact.

We need not address the soundness of the lower courts' application of the insanity grace period in these cases beyond noting that in each instance, no question was raised regarding the speculative nature of the plaintiff's claim or the inability of the factfinder to render a reliable verdict. In each case there was a factually verifiable consequence of some action by the defendant, as well as an objective external standard against which to measure the defendant's conduct. The question impli-

cating the insanity grace period was whether the plaintiff had the ability, before commencement of the action outside the limitation period, to aid in pursuit of the claim against the objecting defendant. Where it was eventually concluded that the plaintiff suffered from insanity, as defined by the statute, the same confidence existed in the trier of fact as existed when the discovery rule was properly applied to extend the limitation period. The critical issue in determining whether to allow a plaintiff's claim to survive either by way of the common-law discovery rule or the statutory disability grace period thus becomes whether the overarching policy goals normally protected by the statute of limitations remain inviolate. Stated more succinctly, there must be some indicia of assurance of reliable fact finding.

C

Application of the discovery rule and insanity grace period in the cases before us would endanger precisely those policy goals advanced by statutes of limitation. The absence of verifiable evidence creates "circumstances [that] would be unfavorable to a just examination and decision" and would increase the danger of the assertion of fraudulent or speculative claims. *Lothian, supra* at 167.

We approvingly quote the following summary of the Washington court in *Tyson, supra* at 79, articulating the basis for the decision not to apply the discovery rule to extend the limitation period for repressed memory cases:

It is proper to apply the discovery rule in cases where the objective nature of the evidence makes it substantially certain that the facts can be fairly determined even though considerable time has passed since the alleged events occurred. Such

circumstances simply do not exist where a plaintiff brings an action based solely on an alleged recollection of events which were repressed from her consciousness and there is no means of independently verifying her allegations in whole or in part. If we applied the discovery rule to such actions, the statute of limitations would be effectively eliminated and its purpose ignored. A person would have an unlimited time to bring an action, while the facts became increasingly difficult to determine. The potential for spurious claims would be great and the probability of the court's determining the truth would be unreasonably low.

We emphasize that our decision today does not in any way invite or signal affirmation of a claim supported by "objective and verifiable evidence," whatever that phrase might encompass, that would allow pursuit of plaintiffs' claims through application of the discovery rule or insanity grace period. If true, the defendants' conduct was reprehensible, and the absence of such facts makes neither a plaintiff's injury nor a defendant's moral responsibility less genuine. We hold only that those devices, absent legislative action subsequent to this opinion,[14] are not presently available for pursuit of repressed memory tort actions. The presence of merely corroborative evidence does not adequately protect the interests addressed by the statutes of limitation or bring these cases within the zone of comfort occupied by those cases in which we have allowed the limitation period to be extended through either the discovery rule or insanity grace period. In cases such as *Chase, Moll,* and *Larson, supra,* no question remained regarding whether there was harm to the plaintiff or whether reliable evidence existed to evaluate whether the harm was a consequence of the defen-

[14] See part III.

dants' actions. The questions remaining for the
trier of fact were whether the evidence was suffi-
cient to fulfill the burden of proof that the defen-
dant's action resulted in the plaintiff's harm, and
whether those actions constituted a breach of an
objectively identifiable duty of care at the relevant
time. Both questions could be evaluated by the
factfinder by reference to expert testimony and
tangible evidence supporting and rebutting the
factual cause of injury and whether it was or was
not a result of a breach of the defendant's duty of
care to a consumer or patient at the time of the
injury. Where the existence of injury, as well as
the existence and reliability of any evidence of a
causal link to the defendants, turns simply on one
person's word against another, assurance of a
reliable resolution of the relevant issues is proble-
matic. In short, we cannot conclude with any
reasonable degree of confidence that factfinders
could fairly and reliably resolve the questions
before them, given the state of the art regarding
repressed memory and the absence of objective
verification.

Adoption of the plaintiffs' position would leave a
determination of the onset of a limitation period
an open question within the subjective control of
the plaintiff. Placing a plaintiff in this discretion-
ary position to allege the onset of the disability of
repressed memory and the termination of that
condition within an applicable grace period would
"vitiate the statute of limitations as a defense"
and is a circumstance we have rejected in the past.
*Moll* at 16 (refusing to adopt a rule that the
limitation period for actions against DES producers
should only commence after the plaintiff "per-
ceived herself to be injured"). We therefore hold
that neither the discovery rule nor the statutory
grace period for persons suffering from insanity

extends the limitation period for tort actions allegedly delayed because of repression of memory of the assaults underlying the claims. While the Legislature may ultimately resolve the threshold reliability question in favor of plaintiffs claiming repressed memories, neither device is presently available to extend the limitation period for repressed memory tort actions, even upon presentation of allegedly "objective and verifiable evidence" of a plaintiff's claim.[15]

                        III

Our decision should not be read as an expression of opinion that assault-based tort actions that plaintiffs have allegedly been unable to commence because of memory repression should never be recognized. We hold only that the devices presently available to this Court to allow actions beyond the statutory limitation period are inappropriate vehicles by which to allow these claims to survive a statute of limitations challenge. Neither the discovery rule nor the insanity disability grace period contemplates the situations presented to us by plaintiffs' claims.

The more appropriate forum for resolution of the question whether persons alleging repression of memory of past assaults should be allowed to pursue claims against their accused attackers is the legislative arena. There is justifiably deep and widespread social concern over, and condemnation of the incidents of, sexual assaults of minor chil-

---

[15] We do not address the result of those repressed memory cases wherein long-delayed tort actions based on sexual assaults were allowed to survive summary disposition because of the defendants' admissions of sexual contact with the plaintiffs when they were minors. *Meiers-Post, supra; Nicolette v Carey,* 751 F Supp 695 (WD Mich, 1990). Such express and unequivocal admissions take these cases outside the arena of stale, unverifiable claims with which we are concerned in the present cases.

dren. The reprehensible nature of such acts also carries with it, however, the potential for unwarranted castigation of those unjustly accused of such acts because of the alleged reawakening of memories by a phenomenon not yet fully understood or accepted by the medical and psychological community. See Report of the Council on Scientific Affairs, American Medical Association, *Memories of Childhood Abuse,* CSA Report 5-A-94 (recommending, inter alia, a policy statement that the AMA considers recovery of memories of childhood sexual abuse to "produce results of uncertain authenticity"). No matter how honestly believed by the alleged victim, questions continue to be raised concerning the accuracy and authenticity of repressed memories that return. Ernsdorff & Loftus, *Let sleeping memories lie? Words of caution about tolling the statute of limitations in cases of memory repression,* 84 J Crim L & Criminology 129, 154-162 (1993).[16]

The Legislature has clearly demonstrated its ability to consider the question of extension of the limitation period for actions based on sexual abuse of children and act where it deems appropriate. In 1987, the Legislature amended MCL 767.24(2); MSA 28.964(2), to provide that where the alleged

[16] Wartik, *A question of abuse; adults who suddenly remember that they were victims of child abuse,* Am Health: Fitness of Body & Mind, May 1993, p 62, summarizes the debate:

The so-called recovered-memory phenomenon has divided the psychotherapeutic community. Although some psychiatrists think shocking experiences really can vanish from consciousness for decades at a time, only to reemerge with crystal clarity years later, others do not. Skeptical scientists say too many accounts of long-past abuse conflict with findings on how we store and recall experience. Most recovered "memories," they believe, are subconscious efforts to actually resolve old hurts, in many cases spurred by an increasing number of books, support groups and psychotherapists who see sexual abuse at the root of virtually all psychic pain.

victim of child sexually abusive activity or crimi-
nal sexual conduct is under eighteen years of age
at the time of the commission of the offense, an
indictment for that offense may be found and filed
either within the normal six-year period after
commission of the offense or by the time the
alleged victim reaches the age of twenty-one,
whichever is later. 1987 PA 255.[17] Our state Legis-
lature has recently considered legislation address-
ing the proper limitation period for tort actions
based on injury resulting from sexual abuse—the
very question posed before us today. HB 4518. A
number of other states' legislatures have already
considered the issue.[18]

IV

In the context of these cases, we decline to apply
the discovery rule or disability tolling statute to
indefinitely extend the time limitation for bringing
tort actions based on alleged sexual abuse of the
plaintiffs when they were children. Neither the
discovery rule nor the grace period extended to
plaintiffs suffering from the disability of insanity
comprehends extension of the limitation periods as

[17] It has been reported that only five states make no provision for
tolling or extending the limitation period for criminal actions in
childhood sexual abuse cases. Ernsdorff & Loftus, *supra* at 150-153, n
112.

[18] After the Washington Supreme Court decision in *Tyson, supra,*
the Washington Legislature enacted a law expressly providing for
application of the discovery rule to causes of action based on child-
hood sexual abuse. Wash Rev Code Ann 4.16.340 allows, inter alia,
that claims based on intentional conduct may be brought for injuries
suffered as a result of childhood sexual abuse within three years of (1)
the abusive act causing injury, (2) discovery of the causal link be-
tween the act and the injury, or (3) the time the victim should have
discovered that the act caused the injury. The limitation period is
tolled in all such cases until the plaintiff reaches eighteen and runs
from the date of the last act of sexual abuse.

At least twenty-eight other states have passed or considered legisla-
tion extending the period of limitation for sexual-abuse-related civil
actions. Ernsdorff & Loftus, *supra* at 145-147.

a result of repression of memory of the alleged sexual assaults. We defer to the Legislature to consider the appropriateness of extending the limitation period for commencement of suit in such situations.

The decision of the Court of Appeals in *Lemmerman* is reversed. Both *Lemmerman* and *Williford* are remanded to the trial courts for proceedings consistent with this opinion.

BRICKLEY, C.J., and LEVIN, CAVANAGH, and MALLETT, JJ., concurred with BOYLE, J.

WEAVER, J. (*concurring*). While I join without hesitation in the majority's holding, that neither the discovery rule nor the insanity disability statute addresses repressed memory, I write separately because I disagree with certain portions of the majority's analysis of the discovery rule.

The majority focuses on balancing the benefit of application of the discovery rule against the harm this exception would visit on the defendant and the policies underpinning the statute of limitations. *Ante,* p 66. My disagreement with this reasoning is that the majority has failed to make the initial determination whether the discovery rule is applicable in cases of repressed memory syndrome.

"The doctrine of *contra non valentem agere nulla currit prescriptio,* an exception to the prescription rules, tolls the prescriptive period when a party is unable to exercise his cause of action when it accrues." 54 CJS, Limitations of Actions, § 86, p 122. The doctrine recognizes certain situations in which the prescriptive period is prevented from running, including where the cause of action is not known or reasonably knowable by the plaintiff. *Id. Larson v Johns-Manville Sales Corp,* 427 Mich 301; 399 NW2d 1 (1986).

Both plaintiffs allege that because of repressed memory syndrome, they were incapable of remembering the assaults until less than a year before the suits were filed. Therefore, the key question is whether an allegation of repressed memory syndrome would be deemed by the courts sufficient grounds to say that the plaintiff neither knew nor should have known of the claim.

In a case of alleged repressed memory, I would find that the plaintiff has not shown an inability to bring suit. There is no agreement on the viability and reliability of repressed memory syndrome within the American Medical Association or the American Psychiatric Association.* While I recog-

---

* See, for example:

Person & Klar, *Establishing trauma: The difficulty distinguishing between memories and fantasies,* 42(4) J Am Psychoanalytic Ass'n 1055 (1994).

Brenneis, *Belief and suggestion in the recovery of memories of childhood sexual abuse,* 42(4) J Am Psychoanalytic Ass'n 1027 (1994).

Spiegel & Scheflin, *Dissociated or fabricated? Psychiatric aspects of repressed memory in criminal and civil cases,* 42(4) Int'l J Clinical & Experimental Hypnosis 411 (1994).

Lindsay & Read, *Psychotherapy and memories of childhood sexual abuse: A cognitive perspective,* 8(4) Applied Cognitive Psychology 281 (1994).

Loftus, *The reality of repressed memories,* 48(5) American Psychologist 518 (May, 1993).

American Medical Ass'n, *Report of the Council on Scientific Affairs: Memories of childhood abuse,* CSA Reports 5-A-94.

Herman & Harvey, *The false memory debate: Social science or social backlash?* 9(10) Howard Mental Health Newsletter 2b (April, 1993).

Freyd, *Personal perspectives on the delayed memory debate,* 3(5) Treating Abuse Today (1993).

Briere & Conte, *Self-reported amnesia for abuse in adults molested as children,* 6(1) Journal of Traumatic Stress (1993).

Williams, *Adult memories of childhood abuse: Preliminary findings from a longitudinal study,* APSAC Advisor (Summer, 1992).

Bannon, *Recovered memories of childhood sexual abuse: Should the courts get involved when mental health professionals disagree?* 26 Ariz St L J 835 (1994).

Ernsdorff & Loftus, *Let sleeping memories lie? Words of caution about tolling the statute of limitations in cases of memory repression,* 84 J Crim L & Criminology 129 (1993).

nize that childhood sexual abuse is a tragically common occurrence, in the absence of a consensus on this still-evolving theory from the appropriate medical experts, I feel it would be unwise and premature to recognize the repressed memory syndrome as a basis for applying the discovery rule.

RILEY, J., concurred with WEAVER, J.