**Pechelli ENGLISH, Next Friend of Damien English, Plaintiff,**

v.

**Chad BOUSAMRA, David Sapienzi, and Camp Sancta Maria, Inc., Jointly and Severally, Defendants.**

**No. 1:96 CV 698.**

United States District Court,
W.D. Michigan,
Southern Division.

July 2, 1998.

Peter P. Patrick, Peter Patrick, PC, Cheboygan, MI, Jennifer L. Barron, Charles A. Boyle & Associates, Ltd., Chicago, IL, for Pechelli English, Damien English.

Jon J. Schrotenboer, Nelson & Kreuger, PC, Grand Rapids, MI, Martin W. Buschle, Roberts, Betz & Bloss, PC, Grand Rapids, MI, for Chad Bousamra.

Martin W. Buschle, Roberts, Betz & Bloss, PC, Grand Rapids, MI, for David Sapienzi.

John M. Roels, Wheeler Upham, PC, Grand Rapids, MI, for Camp Sancta Maria.

## *JUDGMENT*

ENSLEN, Chief Judge.

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment on the basis of the statute of limitations, filed February 9, 1998 (dkt.nos.137, 147), are **GRANTED;**

**IT IS FURTHER ORDERED** that plaintiff's Second Amended Complaint is **DISMISSED in its entirety with prejudice;**

**IT IS FURTHER ORDERED** that all remaining motions and appeals of the magistrate judge's orders (dkt. nos. 103, 122, 143, 144, 150, 153, 171, 228, 234, 235, & 238), are **DENIED as moot;**

**IT IS FURTHER ORDERED** that judgment is entered in favor of **DEFENDANTS** and against plaintiff.

## *OPINION*

This matter is before the Court on defendants' motions for summary judgment on statute of limitations grounds. The parties to this action have filed multiple dispositive and nondispositive motions. However, because the Court finds that plaintiff's remaining tort claims are barred by the statute of limitations, the Court dismisses plaintiff's complaint and denies the parties' remaining motions as moot.

**STANDARD**

The purpose of the summary judgment procedure is to "pierce the pleadings and assess the proof in order to see whether

there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P., note following Rule 56). Thus, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a Rule 56 motion, the Court cannot resolve issues of fact, or weigh the evidence submitted, but rather is empowered to determine only whether such issues exist. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987). Furthermore, in reviewing the evidence, the Court must view the " 'inferences to be drawn from the underlying facts ... in the light most favorable to the party opposing the motion.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

The moving parties, here the defendants, carry the initial burden of informing the Court of the basis for their motions and of identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[w]hen a motion for summary judgment is made and supported as provided by this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided ..., must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If after adequate discovery, however, the Court determines that "the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## BACKGROUND

This diversity action arises out of an automobile accident which occurred in the early morning hours of July 18, 1991. At the time of the accident, Damien English was a senior counselor at Camp Sancta Maria (CSM), located in northern Michigan, some 60 miles from Marquette, Michigan. That night, English and two other camp counselors, Chad Bousamra and Dominic Loughlin, were driving back from Marquette at approximately 2:00 a.m., when their car went off the road. During the crash, English was thrown from the vehicle and pinned underneath it. As a result of the accident, English fell into a coma. When he awoke, it became apparent that the closed head injury he received caused some permanent brain damage.

Upon their arrival on the scene, the police found Chad Bousamra in the driver's seat of the car. When Deputy James D. Janisse questioned Bousamra and Loughlin, both boys told him that Bousamra had been driving. Within a few days, English's family arrived and, at that time, both Bousamra's parents and Loughlin told English's mother that Bousamra had been driving. Soon thereafter, however, Bousamra's mother told both English's mother and brother, Pechelli English, that, in fact, Damien had been driving at the time of the accident. Then, on August 3, 1991, Bousamra and Loughlin met with Deputy Janisse at the Antrim County Sheriff's Department at which time they both officially recanted their previous statements made at the scene of the accident and stated that Damien had, in fact, been driving the car at the time of the accident. Deputy Janisse filed a report of the incident which noted the entire sequence of events, including *both* the boys' original and revised statements.

Several months later, after English was released from the hospital, he and his family left western Michigan to return home to their native Ireland. While en route, on October 3, 1991, the English family met with attorneys at the Detroit airport. During the conference, the question of who had been driving the vehicle was raised. At the time, however, the English family elected not to

file any claims. In the fall of 1993, Damien returned to the United States for further surgery. In June of 1994, he moved into his own apartment and enrolled in an English Composition course at the local community college in Grand Rapids, Michigan, which he successfully completed with a grade of B. During this time period, plaintiff periodically discussed whether he had been the individual driving at the time of the accident with various people and even requested and received a copy of the police report. On September 30, 1994, more than three years after the accident, Damien again spoke with a lawyer, John Conroy, a Grand Rapids attorney, to discuss potential litigation arising from the accident. In fact, Conroy discussed the matter with plaintiff on at least half a dozen occasions that fall, but still no case was filed.

Finally, on August 29, 1996, more than five years after the accident, Pechelli English, brother and court-appointed Next Friend of Damien English, filed this action on his brother's behalf against Chad Bousamra, Chad's father Thomas Bousamra, and David Sapienza, the vehicle owner, seeking damages for multiple tort claims. On February 21, 1997, plaintiff amended his complaint to add Camp Sancta Maria as a defendant to an additional negligence claim and two breach of contract claims. On May 7, 1997, the Court entered a stipulation and order dismissing plaintiff's claims against Thomas Bousamra with prejudice. Defendants then filed motions to dismiss, which the Court granted on December 2, 1997, as to Count II, but denied in all other respects. In the coming months, defendants filed an additional nine dispositive motions and several other nondispositive motions. On April 30, 1998, the Court granted defendants' motions for summary judgment on Counts V and VI and dismissed plaintiff's breach of contract claims. The Court, however, declined to address defendants' remaining dispositive motions because the parties had not fully briefed the question of whether fraudulent concealment extended the statute of limitations on plaintiff's tort claims. Having received further briefing on the issue, the Court is now properly equipped to decide whether plaintiff's tort claims are barred by MICH. COMP. LAWS § 600.5805.

**ANALYSIS**

Four of plaintiff's claims remain before the Court for disposition. Counts I and III, which were pled in the alternative, allege that Bousamra either negligently drove the vehicle during the accident or negligently entrusted it to English. Count IV alleges that, in any event, David Sapienza is liable for Bousamra's negligent acts based on a theory of automobile ownership liability. Finally, Count VII sets out a negligence claim against Camp Sancta Maria (CSM). Defendants argue that all of these claims are barred by the statute of limitations. Plaintiff counters, however, that his claims may not be deemed untimely because they fall within the bounds of two statutory exceptions to the limitations period.

Periods of limitation are statutes of repose established to extinguish rights, justifiable or not, that might otherwise be asserted. *Kavanagh v. Noble,* 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150 (1947). They are designed to, among other things: 1) compel plaintiffs to exercise their rights of action within a reasonable time; 2) protect potential defendants from the protracted fear of litigation; and 3) promote judicial efficiency by preventing defendants and courts from having to litigate stale claims. *Moll v. Abbott Laboratories,* 444 Mich. 1, 14, 506 N.W.2d 816 (1993); *see United States v. $515,060.42 in United States Currency,* 152 F.3d 491, (6th Cir.1998). As such, these statutory restrictions "are not simply technicalities[, but rather are] fundamental to a well-ordered judicial system," *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), and therefore, must be strictly construed. *Turner v. Mercy Hospitals & Health Servs.,* 210 Mich.App. 345, 350, 533 N.W.2d 365 (1995) (citing *Mair v. Consumers Power Co.,* 419 Mich. 74, 80, 348 N.W.2d 256 (1984)).

Despite the strong public policies behind barring untimely causes of action, Michigan law provides for several extensions to the limitations period. As a general rule, the Legislature has found that exceptions are warranted where the obstacle to bringing suit is "beyond the control of the plaintiff, such as a legal disability or affirmative act on

**808**

the part of another person that prevents the timely bringing of a claim." *Turner*, 210 Mich.App. at 350, 533 N.W.2d 365. In accordance with the countervailing interests noted above, however, such exceptions are to be narrowly applied. *Id.; see Hill v. United States Dept. of Labor*, 65 F.3d 1331, 1335 (6th Cir.1995).

Under MICH. COMP. LAWS § 600.5805(8), plaintiffs alleging they have incurred an injury to their person as a result of another's negligent conduct are generally required to file suit within three years of accrual of the action. Plaintiff advances two statutory bases for extending the limitations period in his case: first, he argues that he has been incapacitated within the meaning of MICH. COMP. LAWS § 600.5851 from the time of the accident until the present; and second, plaintiff argues that defendant Bousamra's fraudulent concealment of key facts giving rise to the cause of action triggers the two-year extension provided for by MICH. COMP. LAWS § 600.5855. The Court will review both of plaintiff's arguments in turn.

### Incapacity

 Section 600.5851(1) provides that, where the plaintiff is deemed insane at the time the claim accrues, the plaintiff is permitted a "year of grace" from the time when the disability is removed in which to file his or her claim. *Honig v. Liddy*, 199 Mich.App. 1, 3–4, 500 N.W.2d 745 (1993); *see Lemmerman v. Fealk*, 449 Mich. 56, 70, 534 N.W.2d 695 (1995). To prevent the one-year period from beginning to run, this condition of incapacity must be continuous. MICH. COMP. LAWS § 600.5851(4) ("Successive disabilities shall not be tacked."). Furthermore, plaintiffs bear the burden of demonstrating that they are entitled to the benefit of this statute. *Warren Consolidated Schools v. W.R. Grace & Company*, 205 Mich.App. 580, 583, 518 N.W.2d 508 (1994) ("[W]here it appears that the cause of action is prima facie barred, the burden of proof is upon the party seeking to enforce the cause of action to show facts taking the case out of the operation of the

statute of limitations[.]") (citing *McLaughlin v. Aetna Life Ins. Co.*, 221 Mich. 479, 483, 191 N.W. 224 (1922)). Thus, in the instant case, plaintiff must show that he has been incapacitated from the time of the accident in 1991 continuously until at least August 1995, one year before he filed suit, to avoid dismissal on this basis.[1] Although defendant bears the initial burden of demonstrating the absence of a genuine issue of material fact on the question of insanity, once he has done so, the plaintiff must present evidence sufficient to show that a reasonable jury could find in its favor.

Section 600.5851(2) defines insanity as "a condition of mental derangement such as to prevent the sufferer from comprehending rights that he or she is otherwise bound to know and is not dependant on whether or not the person has been judicially declared to be insane." Plaintiff argues that he falls within § 600.5851's protection because his capacity for executive functioning, higher reasoning, and decision-making was permanently impaired as a result of the accident. In support of this position, plaintiff submits the testimony of three doctors, two of whom he hired, and that of his friends and family, all stating that, since the accident, he has trouble making decisions, planning his future, experiences depression, and generally has difficulty "coping" with life.

Defendants have countered that, while plaintiff may have some residual problems with these higher cognitive skills, there is no genuine issue of fact as to whether he has been capable of comprehending his rights since well before August 1995. Defendants first point out that plaintiff has incorrectly defined "mental derangement" in his interpretation of the statute. Arguing that an inability to effectively engage in higher reasoning and decision-making is not the equivalent of an inability to comprehend one's rights, defendants contend that the testimony which plaintiff has submitted is irrelevant. Furthermore, defendants assert that, since none of the individuals deposed nor any of the evidence submitted indicates that plain-

---

1. Defendant CSM correctly notes that, to bring the claim against CSM within the bounds of the exception, plaintiff would have had to be incapacitated until at least February 1996 since CSM

was not joined until February 1997. Although defendant's point is well-taken, the ensuing analysis will demonstrate that it will have no bearing on the Court's holding.

tiff is incapable of comprehending his legal rights, plaintiff has failed to raise a genuine issue of material fact on this point.

▮ Defendant correctly notes that plaintiff's definition of mental derangement does not comport with either the plain language of the statute or the definition applied by the Michigan courts. In *Lemmerman v. Fealk,* 449 Mich. 56, 534 N.W.2d 695 (1995), the Michigan Supreme Court reviewed several lower courts' applications of § 600.5851. *Id.* at 71–73, 534 N.W.2d 695. The courts variously defined "mental derangement" under this section to mean that plaintiff: 1) was "unable to work with his retained attorneys[;]" *Makarow v. Volkswagen,* 157 Mich. App. 401, 405, 403 N.W.2d 563 (1987); 2) "was unable to comprehend or assist his attorney in asserting the cause against the defendant[;]" *Hill v. Clark Equipment Co.,* 42 Mich.App. 405, 407, 202 N.W.2d 530 (1972); and 3) was "unable to attend to personal and business affairs," "that it was necessary to explain to [plaintiff] matters the ordinary person would understand," and that "he was unable to comprehend simple legal procedures." *Davidson v. Baker–Vander Veen Construction Co.,* 35 Mich.App. 293, 298, 192 N.W.2d 312 (1971). In a more recent case, the court upheld granting defendant's motion for summary disposition where plaintiff had experienced memory loss and had difficulty finding his way around his employer's plant, holding that no genuine issue of fact had been presented. *Asher v. Exxon Co., U.S.A.,* 200 Mich.App. 635, 641, 504 N.W.2d 728 (1993). Thus, only a severe mental impairment will justify excusing plaintiff from bringing suit. This determination, however, demands a case by case analysis which will ordinarily be left to the factfinder. *Hill,* 42 Mich.App. at 408, 202 N.W.2d 530.

Taking the evidence presented in the light most favorable to the plaintiff, the Court concurs with defendants' assessment of plaintiff's case. Plaintiff has submitted no evidence in support of his position that he is insane within the meaning of § 600.5851, in

that he has failed to produce any evidence supporting the theory that he was incapable of comprehending his rights. Plaintiff's bald assertion that one might properly infer such incapacity from plaintiff's symptoms is insufficient to withstand summary judgment. Furthermore, his position is subverted by the very evidence to which he points. Indeed, two of the psychologists deposed, including one hired by plaintiff, stated explicitly that, in 1994, plaintiff was *not* suffering from a "mental derangement which prevented him from comprehending his rights."[2] Given that the very expert testimony upon which plaintiff relies explicitly refutes his claims, the Court finds that plaintiff has failed to raise a genuine issue of fact on whether he was insane within the meaning of § 600.5851.

Furthermore, the remaining anecdotal evidence is insufficient to put plaintiff's sanity in question. On the contrary, the record contains substantial uncontradicted evidence beyond the medical testimony which tends to show that plaintiff was sane long before August of 1995. Indeed, the record is riddled with instances in which Damien English made statements and inquiries pertaining to his legal rights and about the circumstances of the accident, including one in which he requested and received the police report in July of 1994. In addition, evidence has been submitted that, in the summer of 1994, plaintiff managed to live alone while successfully completing a college course in English Composition, indicating that he was apparently quite capable of attending to his personal and business affairs. Moreover, none of the evidence submitted supports the contrary conclusion. The various testimonials of friends and family stating that Damien lacked common sense, had an inability to make decisions, was in constant need of assistance and encouragement, while perhaps supportive of plaintiff's far broader definition of insanity, do not support the assertion that plaintiff could not comprehend his rights. Taking the facts alleged in the light most favorable to the plaintiff, the Court finds that the only conclusion supported by the evidence submit-

---

**2.** In addition, plaintiff's other treating psychologist, the remaining medical expert, did not testify that plaintiff had any trouble with comprehending his rights, but rather stated that, as of 1992, in her estimation plaintiff was competent.

ted is that plaintiff was sane within the meaning of § 600.5851 well before August 1995. Having found that defendants have succeeded in identifying a dearth of evidence in support plaintiff's position, and that plaintiff has failed to submit evidence in response to raise a genuine issue of material fact, the Court holds that defendants are entitled to summary judgment on this point.

### Fraudulent Concealment

■ Michigan law provides another extension of the statute of limitations for cases in which the potential defendants to an action take affirmative steps to prevent the plaintiff from discovering the existence of a cause of action. Section 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced·at any time within 2 years after the person who is entitled to bring the action ·discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

Fraudulent concealment is defined as the " 'employment of an artifice, planned to prevent inquiry or escape investigation, and mislead or hinder acquirement of information disclosing a right of action.' " *Platsis v. E.F. Hutton & Co., Inc.*, 642 F.Supp. 1277, 1306 (W.D.Mich.1986) (quoting *Grebner v. Runyon*, 132 Mich.App. 327, 339, 347 N.W.2d 741 (1984)).

■ To successfully advance fraudulent concealment as a basis for avoiding the limitations bar, plaintiff must prove that: 1) defendants wrongfully concealed the existence of the cause of action; 2) plaintiff failed to discover operative facts, within the limitations period, that are the basis of the cause of action; and 3) plaintiff exercised due diligence to discover those facts. *Hill v. United States Dept. of Labor*, 65 F.3d 1331, 1335 (6th Cir.1995); *Michigan* ex. rel. *Kelley v. McDonald Dairy Co.*, 905 F.Supp. 447, 451 (W.D.Mich.1995). The critical question is "whether defendants' alleged conduct con-

cealed from plaintiff facts respecting the accrual or merits of the plaintiff's claim." *Hill*, 65 F.3d at 1337. "It is not necessary that a party should know the details of the evidence by which to establish this cause of action. It is enough that he knows [or should know] that a cause of action exists in his favor[.]" *Gomez v. Great Lakes Steel Div., Nat'l Steel Corp.*, 803 F.2d 250 (6th Cir.1986) (citing *Eschenbacher v. Hier*, 363 Mich. 676, 682, 110 N.W.2d 731 (1961)); *see also Moll v. Abbott Laboratories*, 444 Mich. 1, 21 n. 25, 506 N.W.2d 816 (1993) (holding that the question of whether plaintiff has. sufficient knowledge to bring a claim is not based on "whether the·plaintiff has knowledge of sufficient facts to prevail on a claim, but whether the plaintiff has knowledge of sufficient facts to cause a reasonable person to pursue an investigation that could uncover the evidence needed to lead to an ultimate victory").

■ In the instant case, plaintiff alleges that his cause of action survives the statute of limitations because Chad Bousamra changed his story about who was driving the car at the time of the accident to avoid liability. Defendants counter, however, that plaintiff's argument fails for several reasons: first, plaintiff cannot show that defendants concealed the fact that a cause of action existed; second, plaintiff was aware of all the operative facts soon after the accident; and third, the police report, which was public record, indicated that Bousamra had changed his story.

Applying the above standard, Michigan courts have found that deceitful conduct such as that exhibited by defendant Bousamra and Dominic Loughlin, although immoral, does not necessarily provide a basis for fraudulent concealment. In a case similar to the one at hand, *Witherspoon v. Guilford*, 203 Mich. App. 240, 511 N.W.2d 720 (1994), plaintiff also argued that defendant's deceit extended the limitations period. There, the plaintiff-decedent was killed in a car accident when his car hit a guardrail. *Id.* at 242, 511 N.W.2d 720. Immediately after the accident, defendant told police that she had seen plaintiff's car come into her lane before leaving the road. *Id.* Later, eyewitness and accident reconstruction expert testimony indicated

that, in fact, it was defendant's car that went into plaintiff's lane causing the accident. *Id.* Despite defendant's efforts to conceal her negligent conduct, the court held that, because plaintiff was aware that defendant was at the scene of the accident when it occurred and her identity and version of events were in the police report, her potential for liability were discoverable from the outset, and, therefore, plaintiff's claim was not saved by § 600.5855. *Id.* at 248–49, 511 N.W.2d 720. *See In re Matter of Farris v. United States Fidelity And Guaranty Co.,* 160 Mich.App. 14, 18–19, 408 N.W.2d 92 (1987) (holding claimant "is charged with knowledge of the information contained in the public record") (citing *Heap v. Heap,* 258 Mich. 250, 242 N.W. 252 (1932)).

Similarly, in the instant case, plaintiff argues that he is entitled to the protection of the statute because defendant Bousamra's deceit prevented plaintiff from knowing who was at fault. However, the mere fact that plaintiff did not know who was driving did not preclude him from bringing these claims. Indeed, plaintiff has no greater knowledge now than he either had or could have had in August of 1991 when the police report was filed, and yet, he still managed to file this complaint. Because defendant's deceit did not have an impact on plaintiff's ability to bring the instant cause of action, it can have no bearing on the statute of limitations. Consequently, the Court will grant defendants' motions on this point as well.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motions for summary judgment on statute of limitations grounds, dismisses plaintiff's complaint in its entirety, and dismisses the parties' remaining motions as moot.