*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0417P (6th Cir.)
File Name: 03a0417p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

HIGHLAND CAPITAL, INC.,
*Plaintiff-Appellant,*

*v.*

FRANKLIN NATIONAL BANK,
*Defendant-Appellee.*

No. 02-5505

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 00-00832—William J. Haynes, Jr., District Judge.

Argued: September 9, 2003

Decided and Filed: November 25, 2003

Before: GUY and DAUGHTREY, Circuit Judges;
LAWSON, District Judge.*

———————————

### COUNSEL

**ARGUED:** Jeffrey Alan Greene, Nashville, Tennessee, for
Appellant. Joseph A. Woodruff, WALLER, LANSDEN,

———————————

* The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

DORTCH & DAVIS, Nashville, Tennessee, for Appellee.
**ON BRIEF:** Jeffrey Alan Greene, Nashville, Tennessee, for
Appellant. Joseph A. Woodruff, W. Travis Parham,
WALLER, LANSDEN, DORTCH & DAVIS, Nashville,
Tennessee, for Appellee.

———————————

### OPINION

———————————

DAVID M. LAWSON, District Judge. The plaintiff,
Highland Capital, Inc. (Highland), appeals from a summary
judgment dismissing its complaint against Franklin National
Bank (the Bank) that was brought under the anti-tying
provisions of the Bank Holding Company Act (BCHA), 12
U.S.C. § 1972. Highland asserted that the Bank required
Highland to purchase stock in the Bank's holding company as
a prerequisite for obtaining a loan. The lower court found
that there was insufficient evidence of the connection required
by Section 1972 between the loan and the stock purchase.
We find that a claim under Section 1972 requires proof that
the extension of credit was actually conditioned on the bank's
customer obtaining some other product or service from the
bank or one of its subsidiaries, and that Highland did not offer
evidence on this element sufficient to avoid summary
judgment. We therefore affirm the judgment of the district
court.

I.

At the time of the loan and the stock purchase, Highland
was controlled by its principal shareholder, Steve Morriss. In
an ongoing dispute with his erstwhile business partners,
Morriss lost control of Highland. None of the individuals
who succeeded to control of the company were involved in
the loan transactions at issue here, and all of the personnel
who were involved, including bank representatives and
Morriss, aver that no tying condition was imposed as a

requirement for obtaining the loan. Highland, under new ownership, believes that it offered circumstantial evidence sufficient to contradict the direct denials of the defendant's witnesses and to create a material fact question that precludes summary judgment.

Morriss controlled Highland in 1998. In the later part of that year, Highland obtained a substantial sum of money from a commercial transaction. It subsequently deposited $1 million of those funds into its account at the Bank. Morriss then approached Charles Lanier, the Bank's Executive Vice-President, and told him that Highland was interested in purchasing the stock of the Bank's holding company, Franklin Financial Corporation (FFC). Lanier sent Morriss to see James Rinker, a broker with Franklin Financial Securities, Inc. (FFS), who helped the plaintiff open a securities account.

Shortly thereafter, Highland sought a loan from the Bank for $610,000 to refinance an existing loan on a 42-acre parcel of real estate located in Williamson County, Tennessee, referred to as the Hollis Tract. Morriss averred that he alone made the decision to seek this loan on behalf of Highland.

Highland received loan approval from the Bank on November 10, 1998. In making its decision, the Bank waived its otherwise applicable policy of requiring a written loan application and submission of the borrower's financial statement. The Bank also did not require Morriss to personally guarantee the loan. The Bank's decision is reflected on a pre-printed form entitled "Lending Officer's Report" dated November 10, 1998. This report states: "Customer has wired $1,000,000 into cash management account. Customer has also put in a buy order for 70,000 shares of Franklin Financial Stock." Joint Appendix (J.A.) at 667. The loan collateral is described as 46 acres of real estate containing a 2,500-square-foot home valued at $800,000, apparently referring to the Hollis Tract, and a $90,000 escrow assignment. The form also notes that the financial statement requirement was waived, and contained the explanation that

the Bank had "dealt with customer on several deal [sic] over the past years. Satisfactory. Will update appraisal." *Ibid.* The Report, however, was later amended to correct errors and to remove the reference to the stock purchase.

On the same day that the loan was approved, Highland deposited $499,777 into a securities fund account with FFS. These were the funds used to purchase 69,400 shares of stock in the Bank's holding company, FFC. Morriss claims that he bought the stock "because [he] believed it was a good investment." Aff. of Steve Morriss at ¶ 2, J.A. at 79. Prior to this time, neither Highland nor Morriss owned any FFC stock, nor did Morriss or Highland ever purchase additional stock.

The loan closed on December 7, 1998, and was secured by the Hollis Tract and a portion of the plaintiff's FFC stock.

In the months that followed, the Bank made several additional loans to Highland at Morriss' request. There is no contention by the plaintiff that these loans were conditioned upon Highland's purchase of FFC stock. Rather, the plaintiff claims that these other loans provide circumstantial evidence that the original loan was the product of an illegal tying arrangement between the plaintiff and the Bank. The Bank lent the plaintiff $157,000 in February 1999 to fund litigation in which Morriss was embroiled with his ex-partners. Then in April 1999, the Bank lent the plaintiff an additional $85,000, which was also secured by the Hollis Tract. The Bank additionally approved a renewal of the original $610,000 note for $607,000 in January 2000, and a renewal of the $157,000 note on May 31, 2000.

Morriss lost control of Highland in July 2000. A closely held company called Tareco Properties, Inc. (Tareco) purchased a Texas court judgment that was entered sometime prior to 2000, for which Morris was somehow liable. In partial satisfaction of that judgment, Mr. Morriss gave Tareco his Highland stock. However, Tareco is owned and controlled by Kevin McShane, who is affiliated with two of

Morriss' former business partners, Jerrold Pressman and Robert Geringer. Pressman is the plaintiff in a lawsuit pending in the federal district court in Tennessee that alleges that Morriss, with the aid of the Bank and its Chairman, conspired to defraud Pressman and Morriss' other business partners in a limited partnership known as Inglehame Farm, LP. The purpose of this limited partnership was to develop 400 acres of Tennessee property. The property, however, lacked access to major streets. The suit alleges that Morriss, who was supposed to investigate acquiring the Hollis Tract for that purpose for the partnership, told his partners that the property could not be purchased and, unbeknownst to them, proceeded to purchase it for himself.

Highland, under its new ownership, filed suit against the Bank asserting that the $610,000 loan was conditioned on the purchase of stock in the Bank's holding company, and thus the Bank violated the anti-tying provisions of 12 U.S.C. § 1972. The Bank moved for summary judgment. In support of the motion, the Bank filed affidavits from the seven members of its loan committee, who each averred that the loan was not conditioned on the purchase of the holding company stock; the affidavits of Morriss and Bank officer Charles Lanier, who attested that Morriss initiated the inquiry regarding the purchase of the stock and that Lanier did not solicit the transaction; and the deposition of McShane, in which he acknowledged that he was aware of no document, statement or conversation that established the tying of the loan to the stock purchase. In response, Highland offered deposition evidence that tended to prove that most of the Bank's stock that Highland purchased came from the private holdings of Gordon Inman, the Bank's Chairman, who stood to profit personally from the transaction. The plaintiff points out that James Rinker of FFS was Inman's son-in-law and that he facilitated the stock transaction. Highland also filed an affidavit from an individual who contended that Inman engaged in private loan transactions with him when the Bank could not do so, and that one of those loans was conditioned on the purchase of Bank holding company stock. A former

Bank employee averred that Inman caused the Bank to renege on a loan commitment, thereby depriving the Bank of a profitable business opportunity available at a very low risk, and then offered to make the loan privately. Finally, Highland submitted the opinion of Frank De Lisi, who was offered as a banking expert, that the $610,000 loan "should not have been made." Dep. of Frank DeLisi at 152, 170-71, J.A. at 846-850. Highland argued that the irregularities in processing the loan, the lack of solid information about the creditworthiness of the borrower, and other evidence that the loan otherwise would not have been made in the normal course of banking practice, coupled with the nefarious conduct of Gordon Inman who conspired with Morriss to cheat Morriss' business partners, proved that another, illegal motivation must have prompted the Bank to lend $610,000 to Highland; and that the "other motivation" must have been the prior purchase of the holding company stock.

The motion was referred to the magistrate judge, who filed a report recommending that the motion be granted. The magistrate judge first rejected the plaintiff's premise that its statutory claim under the BHCA was analogous to an antitrust cause of action. He then found nothing illogical about a bank making a loan to an established customer with $1 million in the bank and securing the loan with property valued at more than the loan value. The magistrate judge noted that the plaintiff was required to show that it was coerced to purchase bank stock as a condition of the loan to avoid summary judgment. After reviewing the circumstantial evidence, including evidence that the loan was not made pursuant to normal banking procedures, that the loan and stock purchase occurred at relatively the same time, and that the loan was part of a larger scheme between Morriss and the Bank, the magistrate concluded that the evidence did not create a genuine issue of material fact.

Following an order requesting further findings, the magistrate judge supplemented his report and recommendation. The plaintiff filed timely objections to the

recommendation. The district court subsequently granted the defendant's motion for summary judgment and dismissed the complaint on March 22, 2002. The court adopted the magistrate judge's description of the factual record, and then concluded that there was no evidence that the Bank coerced the plaintiff to purchase stock as a condition of obtaining the loan, and no proof that the Bank "possessed the 'appreciable economic' power in the loan market to impose [the] tying arrangement." Dist. Ct. Judgment at 2, J.A. at 13. Judgment was entered for the defendant, and the plaintiff then filed its notice of appeal.

## II.

We review an order granting summary judgment *de novo* and use the same standard employed by the district court. *See Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). That test, of course, is set forth in Federal Rule of Civil Procedure 56(c), which states that summary judgment is allowed where the moving party establishes through pleadings, depositions, answers to interrogatories, admissions, and affidavits that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A moving party can meet its burden under Rule 56(c) by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). *See Estate of Mauro By and Through Mauro v. Borgess Med. Ctr.*, 137 F.3d 398, 401 (6th Cir. 1998). Once the moving party has made that showing, the nonmoving party cannot rest on its pleadings, but must identify specific facts that can be established by admissible evidence that demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex*, 477 U.S. at 324; *Hall v. Tollett*, 128 F.3d 418, 421-22 (6th Cir. 1997).

We review the evidence in the light most favorable to the nonmoving party. However, the party opposing the summary

judgment motion must "do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994) (quoting *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251-52.

As noted above, the statute upon which the plaintiff's claim is based comes from the BHCA, and states in relevant part:

(1)  A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement--

. . .

(B) that the customer shall *obtain* some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company; [or]

. . .

(D)  that the customer shall *provide* some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company.

12 U.S.C. § 1972 (emphasis added). Congress enacted this provision "to apply the general principles of the Sherman Antitrust Act prohibiting anticompetitive tying arrangements specifically to the field of commercial banking." *Kenty v. Bank One, N.A.*, 92 F.3d 384, 394 (6th Cir. 1996) (quoting *Parsons Steel, Inc. v. First Alabama Bank of Montgomery,*

*N.A.*, 679 F.2d 242, 245 (11th Cir.1982), *rev'd on other grounds*, 474 U.S. 518 (1986)).

The Sherman Act does not explicitly prohibit tying arrangements. However, such arrangements can violate both Section 1 of the Sherman Act (15 U.S.C. § 1) and Section 3 of the Clayton Act (15 U.S.C. § 4) when they produce an anticompetitive effect. A tying arrangement may also support a claim for monopolization under Section 2 (15 U.S.C. § 45) of the Sherman Act. *See Davis v. Marathon Oil Co.*, 528 F.2d 395, 398 (6th Cir. 1975). A tying arrangement is defined "as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958). Most tying cases involve a seller's attempt to exploit its economic power over one product or in one market to force a less desirable, tied product on a buyer. Thus, tying arrangements have been found to be "unreasonable in and of themselves whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of interstate commerce is affected." *Id.* at 6.

A tying claim under the Sherman Act requires that the plaintiff prove that a seller had substantial economic power in the tying product's market, *see Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12-13, 26-31 (1984) (noting that "the essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms"), and an anticompetitive effect in the tied-product market. *See PSI Repair Servs. V. Honeywell, Inc.*, 104 F.3d 811, 821-22 (6th Cir. 1997).

However, a plaintiff need not establish a bank's economic power or an anti-competitive effect to make out a claim under 12 U.S.C. § 1972. "The language of the [Act] makes clear that the availability to a potential customer of any credit, property, or service of a bank may not be conditioned upon that customer's use of any other credit, property, or service offered by the bank . . . . The purpose of this provision is to prohibit anti-competitive practices [that] require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." S. Rep. 91-1084 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5519, 5535. Nonetheless, Section 1972 "was not intended to interfere with the conduct of appropriate traditional banking practices," *McCoy v. Franklin Sav. Ass'n* 636 F.2d 172, 175 (7th Cir. 1980) (quoting *Clark v. United Bank of Denver Nat'l Assoc.*, 480 F.2d 235, 238 (10th Cir.), *cert. denied*, 414 U.S. 1004 (1973)), or to prohibit banks from protecting their investments. *Parsons Steel, Inc.*, 679 F.2d at 245.

To make out a claim under Section 1972, therefore, the plaintiff must prove that (1) the bank imposed an anti-competitive tying arrangement, that is, it conditioned the extension of credit upon the borrower's obtaining or offering additional credit, property or services to or from the bank or its holding company; (2) the arrangement was not usual or traditional in the banking industry; and (3) the practice conferred a benefit on the bank. *See Kenty*, 92 F.3d at 394 (quoting *Sanders v. First Nat'l Bank & Trust Co.*, 936 F.2d 273, 278 (6th Cir. 1991)).

The district court based its summary judgment for the defendant in part on the ground that the plaintiff failed to offer evidence of the Bank's "'appreciable economic' power in the loan market to impose [the] tying arrangement." Dist. Ct. Judgment at 2, J.A. at 13. This was error. The plaintiff was not required to prove that the Bank had sufficient strength in the credit market to enable it to impose the tying arrangement. *See Costner v. Blount Nat'l. Bank*, 578 F.2d

1192, 1196 (6th Cir. 1978) (observing that "[t]he bank was also sued under the Bank Holding Company Act, which establishes a Per se [sic] rule and provides the same penalties for tying arrangements as the Sherman Act, but without the necessity of proving any economic power in the market for the tying product"). The plaintiff could satisfy the first element required of a claim under Section 1972 merely by showing that the Bank demanded that Highland obtain other property (the bank holding company stock) or furnish other property (the payment for the stock) as a condition or requirement of obtaining the $610,000 loan.

We agree with the district court, however, that the plaintiff failed to establish a factual issue on the existence of a tying arrangement. In its motion for summary judgment, the defendant pointed out the absence of evidence on this element, and came forward with direct evidence to prove the contrary proposition, in the form of affidavits from everyone involved in seeking and making the loan, who each said that the stock purchase was *not* a condition or requirement for the extension of credit. *See Celotex*, 477 U.S. at 325. Under our summary judgment jurisprudence, the plaintiff was obligated at that point to come forward with facts that proved, or from which a fact finder reasonably could infer, that the Bank required Highland to buy its holding company stock as a condition of receiving the loan. *See Anderson*, 477 U.S. at 247-48. To meet that burden, the plaintiff imported the allegations from the lawsuit by Pressman against the Bank and others that Morriss and Inman were engaged in a conspiracy to cheat Morriss' partners in a real estate development venture, testimony that the stock purchase was filled from Inman's personal holdings through Inman's son-in-law, proof that the loan did not adhere to the Bank's normal lending policies, and the opinion of a banking expert that the loan should not have been made in the normal course of banking business. This offering falls considerably short of the proof that this Circuit requires to establish a successful Section 1972 claim.

The plaintiff argues that the circumstantial evidence points to the conclusion that Morriss caused Highland to buy the Bank's holding company stock specifically in order to influence the Bank's decision on Highland's loan request. That argument suggests that a statutory claim can be established without actually proving "coercion" on the part of the Bank. Indeed, in *Dibidale of La., Inc., v. American Bank & Trust Co.*, 916 F.2d 300 (5th Cir. 1990), the court held that the anti-tying provision of the BHCA "does not include a coercion element." *Id*. at 302. In that case, the plaintiff sought a construction loan from the defendant bank and agreed to hire the bank's preferred choice as construction manager. The loan was made, but the construction manager turned out to be incompetent and caused considerable loss to the plaintiff. The plaintiff admitted that hiring the construction manager was never an explicit condition of receiving the loan, although the bank had made it clear that it would feel "comfortable" with that choice, and that he went along with it out of deference to the bank. In reversing the lower court's dismissal of the Section 1972 claim, the Fifth Circuit construed the "condition or requirement" language of the statute quite broadly, reasoning that "[t]o restrict the scope of those words to tying arrangements in which a seller is literally forced to purchase or provide a tied product or service in order to obtain credit would vitiate that section's intended role, for as Congress recognized, a tying arrangement may squelch competition whether coercive or not." *Id*. at 306.

Likewise, in *S & N Equip. Co. v. Casa Grande Cotton Fin. Co.*, 97 F.3d 337 (9th Cir. 1996), the Ninth Circuit rejected the argument that Section 1972 requires a claimant to show "some modicum of coercion" and, instead, held that "[a]lthough some showing of coercion may be required under the Clayton Act and the Sherman Act, . . . it is not a requirement under the Bank Holding Company Act." *Id*. at 346 n.18. A contrary view, however, was expressed by the Eleventh Circuit in *Integon Life Ins. Corp. v. Browning*, 989 F.2d 1143, 1150-51 (11th Cir. 1993), construing the identical

language found in the Home Owners' Loan Act, 12 U.S.C. § 1464(q). That court held that "to establish a tying in violation of HOLA, a plaintiff must prove that the thrift forced or coerced the plaintiff into purchasing the tied product." *Id.* at 1151.

Although we do not subscribe to the view set forth by the Fifth Circuit, because it disregards the plain language of the statute, we likewise believe that emphasizing the notion of "coercion" creates a requirement that is not contained in the statute. Section 1972 does not require proof of "force or coercion," particularly as those terms are used in the economic sense in antitrust jurisprudence. The terms employed in the statute are "condition or requirement." A "condition" is "[s]omething demanded or required as a prerequisite to the granting or performance of something else." OXFORD ENGLISH DICTIONARY 309 (2d ed. 1989). A "requirement" is "that which is called for or demanded; a condition which must be complied with." *Id.* at 1565. Giving those terms their ordinary meanings as used in Section 1972, we conclude that a statutory violation is established by proof that a bank conveyed an intention to withhold credit unless the borrower fulfilled a "prerequisite" of purchasing or furnishing some other product or service. The borrower may readily agree with the tying condition demanded by the bank; that is, the whole notion of force or involuntary submission may be absent. Nonetheless, proof of a statutory violation will be made out by evidence that taking or furnishing another service or product is a condition that must be fulfilled before the bank will agree to extend credit.

In this case, Morriss agreed to purchase the Bank's holding company stock on behalf of Highland, and the buy order was reported to the loan committee in the first version of the Loan Officer's Report. This evidence may establish that the Bank looked more favorably upon Highland because of the stock purchase. It is not enough, however, merely to bring forth evidence that the borrower purchased another bank product or service to curry favor with the lender, or that the lender was

positively impressed by such conduct, or even that the other transaction was a factor in the bank's decision to extend credit. According to the plain language of the statute, a claimant must prove that the purchase of the tied product or service was a mandatory condition or requirement of obtaining a loan from the lender. The borrower must be prevailed upon to agree to the additional product or service, lest credit be denied.

This element of a Section 1972 claim may be established by circumstantial evidence. However, the plaintiff in this case failed to offer admissible evidence from which an inference of a tying arrangement could be drawn. The procedure that led to the loan's approval, although perhaps out of the ordinary, did not demonstrate that a tying condition was imposed. A reasonable person would not conclude that a bank's decision to lend $610,000 to an established bank customer, without a loan application or personal guarantee, when the loan was secured by property appraised at $800,000 plus additional property valued at $90,000, was unusual or prompted by an ulterior motive. The evidence of the shadowy dealings between Morriss and Bank Chairman Inman may be relevant to the other litigation involving Morriss' former business partners, but it has little to do with any connection between the loan and the stock purchase. To the contrary, the inference that emerges from this evidence is that the original and subsequent loans were made to further another conspiratorial objective allowing Morriss to usurp a business opportunity from his real estate venture, not as consideration for the purchase of FFC stock. Inman's private dealings with other Bank customers does nothing to further the inference of a tying arrangement involving the Bank, Morriss, and the plaintiff. Finally, the plaintiff's banking expert, who testified that "[t]here is no direct evidence, whatsoever, that there is – there was a requirement, as a condition of the loan, that he buy the stock," Dep. of Frank DeLisi at 152, J.A. at 847, does not furnish the necessary link that supports an inference of a tying arrangement.

                         III.

   The plaintiff's argument that the Bank's $610,000 loan was illegally tied to Highland's purchase of FFC stock does not rise above the level of speculation or conjecture. Constructing a circumstantial case in the face of overwhelming, contrary, direct evidence was a daunting burden that, we believe, ultimately proved insurmountable for the plaintiff. The plaintiff failed to establish a genuine issue for trial on an essential element of its claim. We therefore **affirm** the district court's summary judgment in favor of the defendant.