Marianne **CURRAN** as guardian ad litem for Christine Kay Schmidt, a legally incapacitated person, Plaintiff,

v.

**CITY OF DEARBORN,** Nabil Hawily, Elizabeth L. Disanto, Officer Walter Anhut, Officer George Earhart, Officer Daniel Goebel, Michael Ball, and Officer Howard Harrison, Defendants.

Case No. 12–10328.

United States District Court,
E.D. Michigan,
Southern Division.

July 31, 2013.

Scott Murdoch, Murdoch Law Firm, Dearborn, MI, for Plaintiff.

Laurie M. Ellerbrake, Dearborn City Legal Department, Dearborn, MI, R. Soren Andersen, R. Soren Andersen Assoc., Royal Oak, MI, for Defendants.

### OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY ALL DEFENDANTS EXCEPT NABIL HAWILY

DAVID M. LAWSON, District Judge.

Plaintiff Christine Schmidt rented a house in Dearborn, Michigan from defendant Nabil Hawily. In March 2008, in the midst of an apparent rent dispute, Hawily secured the assistance of Dearborn city police officers, who arrested Schmidt and removed her from the house without a warrant or other legal process. Schmidt was prosecuted for a misdemeanor, but the case was dismissed. She filed a complaint

on January 25, 2012 alleging a violation of her civil rights and various state law claims. Defendants City of Dearborn, assistant city attorney Elizabeth L. Disanto, police officers Walter Anhut, Michael Ball, George Earhart, Daniel Goebel, and Howard Harrison (the Dearborn defendants) moved for summary judgment. The dispositive issue is whether the plaintiff's claims are time barred, and that issue turns on whether the plaintiff was "insane" within the meaning of Michigan's tolling statute. The Court finds that the plaintiff has not presented evidence that creates a genuine question of fact on whether she was mentally incapacitated when her claim accrued continuously until at least one year before she filed her lawsuit. Therefore, the statute of limitations bars all her claims except her claim for malicious prosecution and abuse of process. However, the record facts do not support those claims. The Court will grant the motion for summary judgment and dismiss the case against all defendants except Nabil Hawily.

### I.

On the evening of March 15, 2008, plaintiff Christine Schmidt was at her rented home at 5287 Mead, in Dearborn, Michigan. According to Schmidt, she and her husband rented the house from their landlord, defendant Nabil Hawily. Schmidt had lived at the Mead address for four or five months. She and her husband shared both the upstairs and downstairs areas of the house, but Schmidt spent some time alone in the upstairs portion, because she smoked and her husband did not like the smell of smoke in the parts of the house that he used. At the time, Hawily was trying to sell the house, and he had come to the house to show it to buyers a number of times while Schmidt was there.

Around 10:30 p.m. on the evening of March 15, Hawily came by the house while Schmidt was home and knocked on the door. According to Hawily, he was attempting to collect overdue rent. Schmidt refused to let him in due to the late hour and because her husband was not home. Hawily got angry and told Schmidt he would call the police. He returned in the company of Dearborn Police officers around 12:30 or 1:00 a.m. According to the arrest report logged by defendant officer Walter Anhut, he and defendant officer Daniel Goebel responded to 5287 Mead in response to a complaint of "landlord tenant trouble." Hawily told the officers that he owned the home and had rented out part of it to a tenant living on the lower floor, but that the upper floor was supposed to be vacant. According to Hawily, an unknown person had illegally entered and was inside the upper floor portion of the house, refusing to leave. Hawily let the officers into the home, and they went upstairs to knock on the door to the second floor area. Schmidt refused to open the door, and a series of verbal exchanges ensued, the contents of which are disputed by the parties. According to the officers and Hawily, Schmidt cursed at them, insulted them, and told them to go away. Schmidt maintains that she told the officers several times that she was a tenant of the house, that she rented it from the owner, and that she had paid her rent.

Eventually, Anhut and Goebel summoned their superior, defendant Sergeant George Earhart, who came to the scene along with defendant officers Michael Ball and Howard Harrison. On Sergeant Earhart's order, and with Hawily's consent, the officers broke down the door to the apartment, went inside the second floor area, and arrested Schmidt. Schmidt was taken to the Dearborn police department and booked for unlawful entry. On March 17, 2008, Schmidt was released on bond. On the day after the arrest, Hawily went to the house while Schmidt's husband was there, and Hawily removed some of

Schmidt's furniture and other property from the second floor area. According to Hawily, Schmidt's husband told him only then that his wife had been living in the house with him and occupying the second floor.

The criminal case lingered for more than a year while Schmidt remained out on bond, and on March 31, 2009, the case was dismissed. The trial court found that Hawily's testimony was "totally incredible," that the house at 5287 Mead was a single-family residence, and that at the time of her arrest Schmidt had a Michigan driver license on her person that had a secretary of state change of address sticker affixed to the back listing her address as 5287 Mead. Schmidt has submitted various utility and tax bills addressed to her at the 5287 Mead home, which she asserts were in the apartment at the time the officers entered and arrested her. The trial court concluded that Hawily "used the police department to help collect rent for him," and admonished Hawily on the record: "Next time you want to enter somebody's premises [and] move somebody's goods out ... you have to get an order from the court. That's what Landlord–Tenant court is for." Pl.'s Resp. to Mot. for Summ. J., Ex. 5, Hr'g Tr. at 98.

Schmidt filed her complaint in this Court on January 25, 2012. On April 9, 2012, she filed an amended complaint that contains fifteen counts. Her federal claims are pleaded under 42 U.S.C.1983 and include allegations of unlawful arrest (count I), unlawful detention and confinement (count II), conspiracy to violate constitutional rights (count III), supervisory liability (count IV), malicious prosecution (count V), malicious abuse of process (count VI), deprivation of property (count VII), conversion (count XIII), and negligent supervision (count XV). She also pleads state law claims for false arrest and imprisonment (count VIII), assault and battery (count IX), conspiracy (count X), intentional infliction of emotional distress (count XI), negligent infliction of emotional distress (count XII), and gross negligence (count XIV). All defendants answered the amended complaint, and all defendants other than Hawily filed a motion for summary judgment. The Court heard oral argument on May 1, 2013.

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As the Sixth Circuit has explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed.R.Civ.P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Alexander v. CareSource*, 576 F.3d 551, 557–58 (6th Cir.2009).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir.2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that

the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank,* 350 F.3d 558, 564 (6th Cir.2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Thus, the mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." 350 F.3d at 564 (quoting 477 U.S. at 252, 106 S.Ct. 2505) (quotations omitted).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala,* 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.,* 260 F.3d 574, 581 (6th Cir.2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler,* 215 F.3d 594, 599 (6th Cir.2000). An issue is "genuine" if a "reasonable jury could return a verdict for the

nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.,* 14 F.3d 1143, 1148 (6th Cir.1994) (quoting 477 U.S. at 248, 106 S.Ct. 2505).

In a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim. *Davis v. McCourt,* 226 F.3d 506, 511 (6th Cir.2000). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.,* 936 F.2d 889, 895 (6th Cir.1991).

### A. Statute of limitations

#### 1. Time limits

 The Dearborn defendants contend that nearly all the plaintiff's claims are time barred. The parties substantially agree on the applicable law. In Michigan, a three-year statute of limitations applies to federal claims brought under 42 U.S.C. § 1983. Mich. Comp. Laws § 600.5805(10); *Scott v. Ambani,* 577 F.3d 642, 646 (6th Cir.2009). The date on which a section 1983 claim accrues is determined by reference to federal law and in accordance with common-law tort principles. *Wallace v. Kato,* 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). "Under those principles, it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Ibid.* (citations, quotations marks, and brackets omitted). "In actions brought under § 1983, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Ibid.* (citing *Kelly v. Burks,* 415 F.3d 558, 561 (6th Cir.2005)). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir.1984).

"[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace v. Kato,* 549 U.S. 384, 397, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). The limitations period on a claim of false imprisonment "begin[s] to run against an action for false imprisonment when the alleged false imprisonment ends." *Id.* at 389, 127 S.Ct. 1091.

"[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Heck v. Humphrey,* 512 U.S. 477, 489, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Under these principles, Schmidt's claims for unlawful arrest under the Fourth Amendment accrued on March 15, 2008, when the arrest occurred. *Wallace,* 549 U.S. at 397, 127 S.Ct. 1091. The claim for false imprisonment accrued on March 17, 2008, when she was released on bond. *Id.* at 389, 127 S.Ct. 1091. The claim for alleged unlawful deprivation of property accrued on the date that she alleges her property was taken, which was the day after her arrest, or March 16, 2008. The three-year limitations periods on these claims therefore expired between March 15, 2011 and March 17, 2011. Schmidt filed her complaint on January 25, 2012, more than ten months after the period for timely filing of her claims had ended. Therefore, her federal claims for unlawful arrest (count I), unlawful detention and confinement (count II), supervisory liability(count IV), deprivation of property (count VII), conversion (count XIII), and negligent supervision (count XV) are time barred unless the statute of limitations was tolled by her disability.

Similarly, the limits that apply to the various state law claims in the complaint are as follows: two years for false arrest and imprisonment (count VIII) and assault and battery (count IX), Mich. Comp. Laws § 600.5805(2); and three years for intentional infliction of emotion distress (count XI), negligent infliction of emotional distress (count XII), conversion (XIII), gross negligence (count XIV), and negligent supervision (count XV), Mich. Comp. Laws § 600.5805(10). Under Michigan law, except for enumerated specific types of claims not at issue here, a tort "claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827.

All of the state law claims accrued at the latest on March 17, 2008, and the various limitations periods expired no later than March 17, 2011. Because the plaintiff filed her complaint on January 25, 2012, more than 10 months after the latest possible date for timely filing of any of her state law claims, all of those counts are time barred unless tolling applies.

Count V of the amended complaint alleges malicious prosecution under 42 U.S.C. § 1983. That claim accrued on March 31, 2009 when the criminal case was dismissed, and the three-year limitations period therefore expired on March 31, 2012. *Heck,* 512 U.S. at 489, 114 S.Ct. 2364. Schmidt filed her complaint on January 25, 2012, well within the time allowed.

### 2. Tolling

Just as limitations periods are taken from state law, so are the rules regarding tolling. *Wallace,* 549 U.S. at 394, 127 S.Ct. 1091 ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitation."); *Hardin v. Straub,* 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989) ("Limitations periods in § 1983 suits are to be

determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules'; New York's legislative choices in this regard were therefore 'binding rules of law.'"); *Fox v. DeSoto,* 489 F.3d 227, 233 (6th Cir.2007) (dismissing section 1983 claim on the basis of *Wallace* and observing that "[a]bsent some tolling or delay in accrual, all of these claims would be untimely because they were not brought [for] more than two years after the arrest"); *Kucharski v. Leveille,* 526 F.Supp.2d 768, 771 (E.D.Mich. 2007).

By statute, Michigan has established rules for tolling limitations periods as a result of legal disabilities including "insanity." Mich. Comp. Laws § 600.5851. The relevant parts of the statute are set out here:

> (1) ... [I]f the person first entitled to ... bring an action under this act is ... insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to ... bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852.
>
> (2) The term insane as employed in this chapter means a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane.
>
> (3) To be considered a disability, the ... insanity must exist at the time the claim accrues. If the disability comes into existence after the claim has accrued, a court shall not recognize the disability under this section for the purpose of modifying the period of limitations.
>
> (4) A person shall not tack successive disabilities. A court shall recognize only those disabilities that exist at the time

the claim first accrues and that disable the person to whom the claim first accrues for the purpose of modifying the period of limitations.

> (5) A court shall recognize both of the disabilities of infancy or insanity that disable the person to whom the claim first accrues at the time the claim first accrues. A court shall count the year of grace provided in this section from the termination of the last disability to the person to whom the claim originally accrued that has continued from the time the claim accrued, whether this disability terminates because of the death of the person disabled or for some other reason.

*Id.* § 600.5851(1)-(5).

■■ To obtain the benefit of tolling under this statute, *first,* the disability—here, the "insanity"—must have existed when the claim accrued, *Asher v. Exxon Co., U.S.A.,* 200 Mich.App. 635, 641, 504 N.W.2d 728, 731 (1993) (citing *Makarow v. Volkswagen of America, Inc.,* 157 Mich. App. 401, 407, 403 N.W.2d 563, 565 (1987)); *second,* the disability must be continuous, *English v. Bousamra,* 9 F.Supp.2d 803, 808 (W.D.Mich.1998) (citing Mich. Comp. Laws § 600.5851(4)); and *third,* the plaintiff must file her lawsuit within one year of the removal of the disability, *ibid.* The plaintiff "bear[s] the burden of demonstrating that [she is] entitled to the benefit of this statute." *Ibid.* (citing *Warren Consolidated Schools v. W.R. Grace & Co.,* 205 Mich.App. 580, 583, 518 N.W.2d 508, 510 (1994)). At the summary judgment stage, the "defendant bears the initial burden of demonstrating the absence of a genuine issue of material fact on the question of insanity, [and] once he has done so, the plaintiff must present evidence sufficient to show that a reasonable jury could find in its favor." *Ibid.*

The Dearborn defendants argue that the plaintiff was not mentally disabled when her claims accrued, and even if she was, the disability was not continuous through the time she wants the statute of limitations tolled. The plaintiff disagrees. She points to (1) the Dearborn court docket entry that says that she was confined at the Kingswood mental health facility at the time of her arraignment on April 1, 2008; (2) documentation from September 2008 relating to a petition for involuntary commitment, including two clinical certificates of psychiatrists diagnosing bipolar disorder, manic episode; and (3) a determination by the Wayne County, Michigan probate court that the plaintiff was legally incapacitated and required the appointment of a guardian in 2012. The plaintiff also argues that the Social Security Administration found her disabled in 1999, but the record reference she cites for that proposition does not support it.

Although the evidence offered by the plaintiff tends to show her fragile mental condition, it does not show that Schmidt's mental state on March 15, 2008 was such as to "prevent [her] from comprehending rights [that she was] otherwise bound to know," Mich. Comp. Laws § 600.5851(2). And even if she could establish that she was insane as of the time of the unlawful arrest, she has offered nothing to show that her disability was continuous from March 15, 2008 through at least one year before she filed her complaint. The probate court documents are not helpful because they refer to periods six months and four years after the claim-accrual date. Although the September 2008 records reflect Schmidt's mental condition, they do not indicate that Schmidt was unable to comprehend any substantive legal rights. The medical evaluation describes her as "bipolar manic with psychosis," notes that she had delusional or paranoid fears about people trying to poison her, was not compliant in taking her medication, was "aggressive and paranoid," and "has poor insight and judgment." Pl.'s Resp. to Mot. for Summ. J., Ex. 2, Medical records at 1–2. The medical findings reflect that "as a result of mental illness [Schmidt] is unable to attend to [her] basic physical needs (such as food, clothing or shelter)," and that she was "unable to understand the need for treatment." Id. at 2. Although that evaluation supports a conclusion that Schmidt required confinement and treatment for her mental condition in September 2008, the records do not demonstrate that Schmidt was unable to comprehend her legal rights six months earlier.

The docket entry on April 1, 2008 that "def in Kingswood–Ferndale" at the time of her arraignment might contain a kernel of evidence of some sort of mental instability. However, there is nothing in the record describing the Kingswood facility or any record or explanation as to the significance of that docket entry. Schmidt has offered no medical records relating to her stay at Kingswood that reflect any medical opinion on her condition or the reason she resided there at time she was arraigned. Nothing in the record shows that Schmidt suffered from a mental derangement that prevented her from comprehending her rights on March 15 or March 17, 2008. In fact, the plaintiff's own testimony suggests otherwise. She testified at her deposition that on the night in question she verbally rebuked the landlord's demands to enter her home, and the demands of the police that she let them in, insisting on her right to remain undisturbed in her home. Although Schmidt testified that she had been "off her medication" at the time of her arrest for "about three weeks," she evidently was not confined to any mental institution at the time she was arrested at her home, and her testimony does not support any reasonable conclusion that she had a mental state that would have made

confinement necessary or prevented her from asserting her legal rights on March 15, 2008.

Even if that evidence creates a fact question about Schmidt's mental state at the time the claims accrued, which it does not, there is no proof that such a condition was continuous. The Dearborn defendants point out that the record of litigation in this matter establishes that Schmidt was sane and competent to assert her legal rights at least during the period of June and July 2010, when she engaged in settlement negotiations with the defendants through her counsel. That evidence is not conclusive, however, as counsel may have taken up the negotiation task on his own. More compelling is the fact that the state district judge proceeded to adjudicate the criminal case against the defendant in state court. The docket entries show that on July 23, 2008, Schmidt was referred for a competency evaluation. There is no record of the results, but the district court held a "review hearing" on November 25, 2008 and an "evidentiary hearing" on January 20, 2009. No determination of incompetency was ever made, and the court proceeded to adjudicate the case on March 31 and April 7, 2009, ultimately dismissing it. Michigan law prohibits courts from proceeding against incompetent criminal defendants. Mich. Comp. Laws § 330.2022(1) ("A defendant who is determined incompetent to stand trial shall not be proceeded against while he is incompetent."); *People v. Shahideh,* 482 Mich. 1156, 1165 n. 18, 758 N.W.2d 536, 543 (2008). The question of competency can be raised at any time, Mich. Ct. R. 6.125(B). Incompetency means the inability to "understand[ ] the nature and object of the proceedings against [her] or [to] assist[ ] in [her] defense in a rational manner." Mich. Comp. Laws § 330.2020(1). If the state judge even suspected that Schmidt was incompetent, he was obliged to stop the proceedings and refer her for a mental examination. Mich. Ct. R. 6.125(C)(1). If Schmidt suffered from a mental disability in 2008, it certainly resolved by March 2009 when the state court proceeded to adjudicate the case. Schmidt did not file her complaint in this case within one year thereafter.

Schmidt is not entitled to the benefit of the tolling sections of Michigan's statute of limitations. Therefore, the counts of her amended complaint that accrued at least three years before January 25, 2012 must be dismissed as time barred; that is, counts I (unlawful arrest), II (unlawful detention and confinement), VII (deprivation of property), XIII (conversion), VIII (false arrest and imprisonment), IX (assault and battery), XI (intentional infliction of emotional distress), XII (negligent infliction of emotional distress), and XIV (gross negligence).

### B. Malicious prosecution/abuse of process

The Dearborn defendants argue that the federal claims based on malicious prosecution and abuse of process fail as a matter of law. As an initial matter, the plaintiff concedes that she cannot proceed against the state prosecutor, defendant Elizabeth Disanto, because she has absolute prosecutorial immunity. The Court will dismiss those counts against her.

One element of a Fourth Amendment malicious prosecution claim is that "the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'" *Sykes v. Anderson,* 625 F.3d 294, 308 (6th Cir.2010) (quoting *Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir.2007)) (alteration in original). In the absence of any evidence that a defendant participated in the decision to detain or prosecute the plaintiff, the plaintiff cannot prevail on a Fourth Amendment malicious prosecution claim against that defendant. It is not necessary that the defendant himself make

the decision to prosecute the plaintiff; however, "[t]o be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids the decision, as opposed to passively or neutrally participating." *Id.* at 308 n. 5. Although a malicious prosecution claim may be sustained where an officer supplies false information to establish probable cause, "an officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id.* at 313–14.

■■■ Schmidt has not offered any evidence that the police officers "made, influenced, or participated in the decision to prosecute" her in the criminal case, *Sykes,* 625 F.3d at 308, and she therefore cannot establish that any of the remaining Dearborn defendants are liable on any claim for malicious prosecution.

"The Sixth Circuit has not 'specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983.'" *Garcia v. Thorne,* 520 Fed. Appx. 304, 311 (6th Cir.2013) (quoting *Voyticky v. Village of Timberlake,* 412 F.3d 669, 676 (6th Cir.2005)). Nevertheless, the Sixth Circuit has "resolved section 1983 abuse-of-process claims without deciding whether such a claim is cognizable and, in doing so ... typically assume[s] that the elements would ... mirror those of state law." *Ibid.* (citing *Voyticky,* 412 F.3d at 676–77).

■■■ In Michigan, to establish a claim for abuse of process, a plaintiff must prove: "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc,* 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981). For an abuse-of-process claim, the misconduct "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* at n. 18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)). An "action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Spear v. Pendill,* 164 Mich. 620, 623, 130 N.W. 343, 344 (1911) (quotation marks omitted).

■■■ Count VI of the complaint, alleging "abuse of process," must be dismissed because the record contains no evidence, and the plaintiff points to none, that would demonstrate that any of the Dearborn defendants made improper use of legal process during the course of her criminal prosecution. Other than the fact of the prosecution itself, she does not allege any incident of improper use of the litigation process during the pendency of the case. Moreover, the plaintiff does not address the merits of her abuse-of-process claim at any point in her brief, other than to argue generally that the police and prosecutors should have known that the documents in her home and her driver license clearly showed she was residing in the house as a lawful tenant and that probable cause for the charge of unlawful entry therefore was lacking.

Counts V and VI, therefore, will be dismissed against the Dearborn defendants.

C. Supervisory liability/conspiracy

■■■ The plaintiff's claims for supervisory liability against the defendant police officers are time barred to the same extent as the underlying constitutional tort claims are time barred. As to the remaining claims, the Sixth Circuit has stated that a "[p]laintiff must prove that [the supervisor defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff

must show that the supervisors somehow encouraged or condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir.2006) (internal and external citations omitted). Furthermore, the Sixth Circuit has stated:

> Supervisor liability [under § 1983] occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir.2002) (quoting *Braddy v. Fla. Dep't of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir.1998)). The plaintiff has not offered any evidence that establishes her supervisory liability claims on the remaining constitutional torts. Count IV will be dismissed.

The plaintiff's claims for conspiracy depend on the viability of the underlying substantive section 1983 and state law claims. "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 769 (6th Cir.2012) (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 157 Mich.App. 618, 632, 403 N.W.2d 830, 836 (1986)). The plaintiff's other tort claims against the Dearborn defendants are not viable. Therefore, the conspiracy claims in counts III and X will be dismissed.

## III.

The plaintiff did not file her complaint in time to avoid the statute of limitations on many of the counts of her complaint. She has not offered evidence that creates a fact question on whether she suffered from a disability that would entitle her to the benefit of Michigan's tolling statute. The surviving counts of the amended complaint do not state viable claims against the Dearborn defendants as a matter of law.

Accordingly, the Dearborn defendants' motion for summary judgment [dkt. # 34] is **GRANTED.**

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE** as to defendants City of Dearborn, Elizabeth L. Disanto, Walter Anhut, Michael Ball, George Earhart, Daniel Goebel, and Howard Harrison **ONLY.**

It is further **ORDERED** that the pending motion *in limine* [dkt. # 46] is **DISMISSED as moot.**